**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAN DONNAWELL, Derivatively on Behalf of Nominal Defendant DEVRY INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) **Case No.** |
| DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, GARY BUTLER, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, JULIA A. MCGEE, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR and LISA W. WARDELL, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| DEVRY INC., | ) ) |
| Nominal Defendant. | ) ) ) |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Jan Donnawell ("Plaintiff"), by her undersigned attorneys, submits this Verified Shareholder Derivative Complaint against the defendants named herein, and alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, a review of public filings, press releases and reports, an investigation undertaken by Plaintiff's counsel, as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action derivatively for the benefit of nominal defendant DeVry Inc. ("DeVry" or the "Company") against certain of its current and former executive

officers and members of its Board of Directors (the "Board") seeking to remedy defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment, federal statutory violations, and other violations of law that have caused DeVry, the real party in interest, to sustain damages.

2.      In gross breach of their fiduciary duties as directors of the Company, the members of the Board's Compensation Committee (the "Compensation Committee") knowingly granted, and the independent members of the Board (the "Independent Directors") knowingly approved, awards of stock options to DeVry's President and Chief Executive Officer ("CEO") Daniel Hamburger ("Hamburger") in deliberate violation of the Company's Incentive Plan of 2005 and Amended and Restated Incentive Plan of 2005 (collectively, the "Plan," attached hereto as Exhibit A).

3.      The Plan allows the Compensation Committee to grant cash incentives and equity awards, including stock options, to executive officers, employees and directors of the Company. The Independent Directors approve all compensation decisions for defendant Hamburger, including equity grants under the Plan. While these directors have the authority to make and approve equity awards to the CEO under the Plan, their discretion in exercising such authority is not unlimited. Rather, the Plan, as approved by DeVry's shareholders, specifically prohibits the award of stock options relating to more than 150,000 shares of DeVry common stock to any one person in any fiscal year.[1]

4.      In blatant violation of this limit, in 2010, 2011 and 2012, the Compensation Committee granted, and the Independent Directors approved, awards of stock options to defendant Hamburger for more than 150,000 shares of DeVry common stock. Specifically, on

---

[1] Originally, the limitation applied to awards made to any one person in any calendar year. The limitation was amended in 2010 to apply to awards made to any one person in any fiscal year.

August 27, 2010, August 24, 2011 and August 29, 2012, the Compensation Committee granted and the Independent Directors approved awards of 184,100, 170,200, and 255,425 stock options, respectively, to defendant Hamburger.  These awards were *ultra vires*, a waste of DeVry's assets and constituted a flagrant breach of the Compensation Committee members' and Independent Directors' fiduciary duties owed to the Company and its shareholders.

5.      In addition to the foregoing, on October 5, 2012, the Board, as a further and separate breach of fiduciary duties and in violation of Section 14(a) of the Securities Exchange Act of 1934 ("Section 14(a)"), filed with the Securities and Exchange Commission ("SEC") and disseminated to DeVry shareholders a Form DEF 14A proxy statement (the "2012 Proxy") containing false and misleading statements and omitting material information regarding the awards of stock options in excess of the Plan's limitations.  The 2012 Proxy's representation that gains on the exercise of the stock option awards to Hamburger were eligible for tax deductibility under section 162(m) of the Internal Revenue Code and failure to disclose that the stock option awards to Hamburger violated the Plan was a material misrepresentation in the solicitation of votes for the election of DeVry's directors, including several Compensation Committee members and Independent Directors, and in the solicitation of votes to approve the compensation paid to DeVry's executive officers, including defendant Hamburger.

6.      Through this derivative action, Plaintiff seeks to recover for the Company the damages caused by the misconduct alleged herein and to compel defendant Hamburger to disgorge to the Company the improper benefits he received.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the allegations contained herein state a federal question relating to the submission and dissemination of false proxy statements in violation of Section 14(a).  This Court also has

jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) in that Plaintiff and Defendants are citizens of different states, and with respect to certain of the Defendants, of foreign states, and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive action designed to confer jurisdiction on a court of the United States which it would not otherwise have.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because nominal defendant DeVry is headquartered in this District. In addition, a substantial portion of the occurrences complained of herein occurred in this District and one or more of the Defendants either resides in, or maintains offices in, this District.

## PARTIES

9. Plaintiff is a shareholder of DeVry, was a shareholder of DeVry at the time of the wrongdoing alleged herein, and has been a shareholder of DeVry continuously since that time. Plaintiff is a citizen of the State of Texas.

10. Nominal defendant DeVry is a Delaware corporation with its principal place of business located at 3005 Highland Parkway, Downers Grove, Illinois, and thus is a citizen of Delaware and Illinois. Shares of DeVry's common stock are traded on the NYSE under the ticker symbol "DV." According to its public filings, DeVry is "a global provider of educational services" and its "institutions offer a wide array of programs in business, healthcare and technology and serve students in secondary through postsecondary education as well as accounting and finance professionals."

11. Defendant Hamburger has served as President, Chief Executive Officer, and a director of DeVry since November 2006. He joined DeVry as an Executive Vice President in November 2002. As set forth above, in 2010, 2011 and 2012, defendant Hamburger received

awards of stock options that exceeded the limit set forth in the Plan by a total of 159,725 shares. Upon information and belief, defendant Hamburger is a citizen of the State of Illinois.

12.    Defendant Christopher B. Begley ("Begley") has served as a director of DeVry since November 2011.  He is a member of the Compensation Committee and is considered by the Company as an Independent Director and thus granted and approved the August 29, 2012 *ultra vires* stock option award complained of herein.  Upon information and belief, defendant Begley is a citizen of the State of Illinois.

13.    Defendant David S. Brown ("Brown") has served as a director of DeVry since November 1987.  He is considered by the Company as an Independent Director and thus approved all of the *ultra vires* stock option awards complained of herein.  Upon information and belief, defendant Brown is a citizen of the State of Illinois.

14.    Defendant Gary Butler ("Butler") served as a director of DeVry from November 2010 to November 22, 2011.  He served on the Compensation Committee and was considered by the Company as an Independent Director and thus granted and approved the August 24, 2011 *ultra vires* stock option award complained of herein.  Upon information and belief, defendant Butler is a citizen of the State of New Jersey.

15.    Defendant Connie R. Curran ("Curran") has served as a director of DeVry since November 2003.  She has served on the Compensation Committee since at least 2010 and is considered by the Company as an Independent Director and thus granted and approved all of the *ultra vires* stock option awards complained of herein.  Upon information and belief, defendant Curran is a citizen of the State of Illinois.

16.    Defendant Darren R. Huston ("Huston") has served as a director of DeVry since November 2009.  He is considered by the Company as an Independent Director and thus

approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Huston is a citizen of the Netherlands.

17.     Defendant William T. Keevan ("Keevan") has served as a director of DeVry since November 2005. He has served on the Compensation Committee since at least 2010 and is considered by the Company as an Independent Director and thus granted and approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Keevan is a citizen of the State of Maryland.

18.     Defendant Lyle Logan ("Logan") has served as a director of DeVry since November 2007. He served on the Compensation Committee in 2010 and is considered by the Company as an Independent Director and thus granted and/or approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Logan is a citizen of the State of Illinois.

19.     Defendant Julia A. McGee ("McGee") served as a director of DeVry from November 1994 to November 7, 2012. She served as Chair of the Compensation Committee from at least 2010 through 2012 and was considered by the Company as an Independent Director and thus granted and approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant McGee is a citizen of the State of New York.

20.     Defendant Fernando Ruiz ("Ruiz") has served as a director of DeVry since November 2005. He is considered by the Company as an Independent Director and thus approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Ruiz is a citizen of the State of Michigan.

21.     Defendant Harold T. Shapiro ("Shapiro") has served as a director of DeVry since November 2001 and as Board Chair since November 2008. He is considered by the Company as

an Independent Director and thus approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Shapiro is a citizen of the State of New Jersey.

22.     Defendant Ronald L. Taylor ("Taylor") has served as a Senior Advisor to DeVry since November 2006 and as a director of DeVry since November 1987. Previously, he served as DeVry's CEO from July 2004 to November 2006 and as its President and Chief Operating Officer from August 1987 to November 2002. Upon information and belief, defendant Taylor is a citizen of the State of Illinois.

23.     Defendant Lisa W. Wardell, formerly Lisa W. Pickrum ("Wardell"), has served as a director of DeVry since November 2008. She is considered by the Company as an Independent Director and thus approved all of the *ultra vires* stock option awards complained of herein. Upon information and belief, defendant Wardell is a citizen of the State of Maryland.

24.     The defendants identified in paragraphs 11-23 are referred to collectively herein as the "Individual Defendants." Unless otherwise indicated, the term "Compensation Committee" refers to defendants Begley, Butler, Curran, Keevan, Logan and McGee, and the term "Independent Directors" refers to defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Wardell.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

25.     By reason of their positions as officers and/or directors of DeVry and because of their ability to control the business and corporate affairs of DeVry, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of DeVry and its shareholders so as to benefit all

shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of DeVry owes to the Company and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

26.     To discharge their duties, the Individual Defendants, as officers and directors of the Company, were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

a.      exercise good faith to ensure that the affairs of the Company were conducted in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business;

b.      exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules and regulations and requirements and the Company's governing documents, *e.g.*, the Plan, including acting only within the scope of their legal authority;

c.      refrain from wasting the Company's assets or otherwise unduly benefiting themselves and other Company insiders at the expense of the Company; and

d.      make full, fair, and accurate disclosures to shareholders.

27.     As set forth in the Company's proxy statements, the Independent Directors (defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Wardell) were responsible for approving the compensation paid to DeVry's CEO. The members of the Compensation Committee (defendants Begley, Butler, Curran, Keevan, Logan and McGee) were responsible for properly administering the Plan and recommending the compensation to be paid to the CEO to the Independent Directors for approval. Specifically, the Compensation Committee members were required to comply with the obligations set forth in the

Compensation Committee Charter, which provides that the Compensation Committee's primary

responsibilities include:

1.      **Board Compensation**.  Periodically review the compensation paid to nonemployee directors and make recommendations to the Board for any adjustments.  No member of the Committee will act to fix his or her own compensation except for uniform compensation to directors for their services as a director.

2.      **Chief Executive Officer Compensation**.

(a)     Assist the other independent members of the Board in establishing CEO annual goals and objectives.

(b)     Recommend CEO compensation to the other independent members of the Board for approval.

(i)      In making this recommendation, consider the results of the annual CEO evaluation led by the Chair of the Board.

(ii)     In determining the long term incentive component of the CEO's compensation, the Committee shall consider, among other factors, DeVry's performance and relative shareholder return, the value of similar incentive awards to CEOs at comparable companies, the awards given to the CEO in past years, the CEO's expected future contributions, and any other factors the Committee deems appropriate.

(iii)    The CEO may not be present during deliberations or voting concerning the CEO's compensation.

3.      **Other Executive Officer Compensation**.

(a)     Review eligibility criteria and award guidelines for DeVry's compensation programs in which the CEO and Senior Leadership Team members participate, including all forms of long-term incentive compensation.

(b)     Review recommendations made by the CEO for "Named Executive Officers" (as defined in Item 402(a)(3) of Regulation S-K promulgated by the SEC and provide guidance regarding annual compensation, including base salary, annual incentive and equity compensation and perquisites.  Approve all long term incentive grants delivered in the form of options.  Periodically review and provide input into other Senior Leadership Team members' compensation recommendations.

(c)     Review the structure and competitiveness of DeVry's executive officer compensation programs considering the following factors: (i) the attraction and retention of executive officers; (ii) the motivation of executive officers to achieve DeVry's academic and business objectives; and (iii) the alignment of the interests of executive officers with the longterm interests of DeVry's shareholders.

(d)     Review and approve DeVry's peer companies and data sources for purposes of evaluating compensation competitiveness and establishing the appropriate competitive positioning of the levels and mix of compensation elements.

(e)     Approve the form of employment agreements for DeVry's CEO and other Senior Leadership Team members.  In connection with reviewing proposed employment agreements for such executives, the Committee shall receive information regarding, among other things, the terms of the agreement, competitive practices, and the potential financial implications of the employment agreement.

4.      **General Compensation Oversight**.  Monitor and evaluate matters relating to the compensation structure of DeVry as the Committee deems appropriate, including:

(a)     Review and approve the total pay-out of short and long term incentive pools.

(b)     Provide guidance to management on significant issues affecting compensation philosophy or policy.

(c)     Review and approve policies regarding CEO and Senior Leadership Team compensation.

(d)     Review and approve total pay-out for the annual Success Sharing contribution.

(f)[sic] Oversee risks and exposures related to employee compensation programs and management succession planning, including assessing whether the DeVry's compensation practices encourage risk taking that would have a material adverse effect on DeVry.

5.      **Compensation Consultant Oversight**.

Retain independent compensation consultants that advise the Committee, as it deems appropriate, including approval of the consultants' fees and other retention terms.  The role of all outside

consultants involved in the compensation process is purely advisory in nature. The Committee retains ultimate responsibility for its' compensation-related decisions.

6. **Disclosure**. Discuss with management DeVry's Compensation Discussion and Analysis ("CD&A") for the annual proxy statement; based on the review and discussion, recommend to the Board that the CD&A be included in DeVry's annual report or annual proxy statement; and produce an annual report of the Committee on executive compensation for DeVry's annual proxy statement in compliance with and to the extent required by applicable SEC rules and regulations and relevant listing authorities.

7. **Other Responsibilities**.

(a) Regularly review and make recommendations to the Board about changes to the charter of the Committee.

(b) Perform an annual evaluation of the Committee's performance and make applicable recommendations.

(c) Approve any new executive compensation plan or any material change to an existing executive compensation plan whether or not subject to shareholder approval.

(d) Make recommendations to the Board with respect to any recoupment or "clawback" policies.

(e) Make recommendations to the Board with respect to any position to be taken by the Board regarding "say on pay" votes and the frequency of such votes.

(f) Make recommendations to the Board with respect to any policy regarding hedging investments in stock of DeVry by directors, officers and employees of DeVry.

28. Additionally, the Individual Defendants, as well as all employees, officers and directors of DeVry, were and are required to comply with the Company's Code of Conduct and Ethics ("Code of Conduct"). According to the Code of Conduct, the Individual Defendants must "fully comply with all laws, external accounting requirements, and DeVry policies and procedures for reporting financial and other organizational information" and "never deliberately make a false or misleading entry in a report or record."

29.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

## SUBSTANTIVE ALLEGATIONS

30.     The Plan was originally approved by the Company's shareholders at DeVry's annual meeting on November 9, 2005.  The Plan was subsequently amended by the Board and such amendments were approved by the Company's shareholders at DeVry's annual meeting on November 10, 2010.  The stated purpose of the Plan is "(i) to encourage outstanding individuals to accept or continue employment with DeVry Inc… and its subsidiaries or to serve as directors of DeVry, and (ii) to furnish maximum incentive to those persons to improve operations and increase profits and to strengthen the mutuality of interest between those persons and DeVry's shareholders by provided them stock options and other stock and cash incentives."

31.     The Plan provides for awards to employees, officers and directors of DeVry in the form of stock options, stock appreciation rights, restricted stock, restricted stock units, performance stock, performance cash awards, annual management incentive awards and other stock or cash awards.

32.     The Plan is administered by the Compensation Committee, and, as stated in the Company's proxy statements, the Compensation Committee "made all final compensation decisions with respect to long term incentive grants to NEOs other than Mr. Hamburger.  The independent members of the Board approved all compensation decisions for Mr. Hamburger," including the stock options granted pursuant to the Plan.

33.     The Plan expressly limits the equity awards that may be granted thereunder.  The original version of the Plan stated that "[u]nder the Plan, no participant may receive in any calendar year (i) Stock Options relating to more than 150,000 shares, (ii) Restricted Stock or

Restricted Stock Units relating to more than 50,000 shares, (iii) Stock Appreciation Rights relating to more than 125,000 shares, or (iv) Performance Shares relating to more than 50,000 shares."

34.     The amended and restated version of the Plan contains the same limitations, except that such limits apply to the awards that can be made to any one participant in any fiscal year, instead of any calendar year.  DeVry's fiscal year ends on June 30th.

35.     Despite the Plan's clear limit of 150,000 stock options per person per fiscal year, the Company's public filings disclose that in August of 2010, 2011 and 2012, the Compensation Committee granted and the Independent Directors approved awards of stock options to defendant Hamburger, purportedly pursuant to the Plan, as follows:

| Grant Date | Stock Options Granted |
|---|---|
| August 27, 2010 | 184,100 |
| August 24, 2011 | 170,200 |
| August 29, 2012 | 255,425 |

36.     The August 27, 2010 award exceeded the 150,000 share limit for calendar year 2010 by 34,100 shares.  The August 24, 2011 and August 29, 2012 awards exceeded the 150,000 share limit for fiscal years 2012 and 2013 by 20,200 and 105,425 shares, respectively.  Thus, the Compensation Committee and the Independent Directors blatantly violated the Plan by making these improper, wasteful and *ultra vires* awards.

37.     The Compensation Committee and the Independent Directors knew that the Plan limited stock option awards to Plan participants to 150,000 shares per person per year, yet they deliberately violated this limit by granting and approving the excessive awards to defendant Hamburger.

38.     Awards of compensation to DeVry officers are entitled to tax deductibility pursuant to section 162(m) of the Internal Revenue Code only if the awards comply with the terms of the shareholder-approved Plan.  By violating the 150,000 share limit, the Compensation Committee and the Independent Directors put at risk the tax deductibility of the stock option awards to defendant Hamburger.

39.     Notwithstanding the clear violation of the Plan, nowhere in the 2012 Proxy (nor in any other public filing) does the Board or the Compensation Committee disclose that the Compensation Committee and the Independent Directors violated the Plan or that the violation put at risk the tax deductibility of the awards to defendant Hamburger.

40.     DeVry stockholders are entitled to rely on the truth of representations made in the proxy materials relating to executive compensation mandates.  At all relevant times, the Board had control over statements made in annual proxy materials sent to DeVry's stockholders and had actual knowledge of statements made in those proxy materials.

41.     The 2012 Proxy failed to disclose that the August 2010, 2011, and 2012 awards to Hamburger each violated the shareholder-approved Plan and that the violations put at risk the tax deductibility of the awards to defendant Hamburger.  In particular, the 2012 Proxy was false and misleading because it falsely implied that that gains on the stock options awarded to defendant Hamburger will be entitled to tax deductibility under section 162(m), when in fact the violation of the 150,000 share limit put at risk the tax deductibility of such awards and the gains thereon.  Specifically, the 2012 Proxy states that "[g]ains on the exercise of stock options . . . qualify as performance-based compensation under Section 162(m)," but does not disclose that the gains on the exercise of the stock options awarded to Hamburger in 2010, 2011, and 2012 likely do not

qualify as performance based compensation under section 162(m) because the awards violated the terms of the Plan.

42.     The 2012 Proxy contained material misstatements and omissions of material fact concerning the stock option awards to the Company's CEO.  Accordingly, the 2012 Proxy was materially false and misleading and unlawfully deprived DeVry stockholders of their right to cast a fully informed vote at the annual meeting, especially with respect to the reelection of defendants Huston, Keevan and Logan, who granted the *ultra vires* awards, and the advisory vote on executive compensation, including the compensation paid to defendant Hamburger.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

43.     The Compensation Committee and the Independent Directors *exceeded* the bounds of the law and legitimate business judgment by granting and approving restricted stock units in excess of the 150,000 option limit, thereby violating the Plan.

44.     Defendants Begley, Butler, Curran, Keevan, Logan and McGee, as members of the Compensation Committee, and defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell, as members of the Board, knowingly caused and allowed the Company to file the 2012 Proxy, which contained materially false and misleading statements and omissions, as alleged herein.

45.     The foregoing misconduct was unjustifiable and constituted a gross breach of these Individual Defendants' fiduciary duties as directors and/or officers of the Company.  The foregoing misconduct was not, and could not have been, an exercise of good faith business judgment.  Rather, it was intended to, and did, unduly benefit defendant Hamburger at the expense of the Company.

46.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, the Company has sustained damages, including, but not limited to, the excess compensation paid to defendant Hamburger in violation of the Plan.

### DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

47.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties, waste of corporate assets, federal statutory violations and unjust enrichment.

48.     Plaintiff is a shareholder of DeVry, was a shareholder of DeVry at the time of the wrongdoing alleged herein, and has been a shareholder of DeVry continuously since that time.

49.     Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

50.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants.  Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

51.     The Board currently consists of twelve directors: defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, Ruiz, Shapiro, Taylor and Wardell and non-defendant Alan G. Merten ("Merten"), who was elected to the Board at the annual meeting on November 7, 2012.  The following directors are incapable of independently and disinterestedly considering a demand to vigorously prosecute this action:

> a.      Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell, because they granted and/or approved the *ultra vires* awards of stock options in violation of the Plan, which was not the product of a valid exercise of business judgment, was a waste of DeVry's assets and for which they face a substantial likelihood of liability;

b. Defendant Hamburger, because he is directly interested in his *ultra vires* awards of stock options in violation of the Plan and because defendant Hamburger's principal professional occupation is his employment as President and CEO of the Company, pursuant to which he stands to earn millions of dollars in salary, bonuses and other compensation, all of which must be approved by the Independent Directors, currently comprised of defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell. Specifically, in fiscal years 2012, 2011 and 2010, defendant Hamburger received total compensation of $5,400,761, $6,136,156 and $6,058,205, respectively.

c. Defendants Hamburger and Taylor, because as disclosed in DeVry's SEC filings, the Company does not consider them to be independent pursuant to the listing standards of the NYSE; and

d. Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, Ruiz, Shapiro, Taylor and Wardell (*i.e.*, the entire Board with the exception of Merten) because they approved and disseminated the false 2012 Proxy, which is likewise not protected by the business judgment rule and subjects all of the foregoing directors to a substantial likelihood of liability for breaching their fiduciary duties of loyalty and good faith and violating Section 14(a).

52. Demand is also excused because the misconduct complained of herein was not, and could not have been, the product of a good faith exercise of business judgment. On the contrary, defendants engaged in *ultra vires* conduct that is not and cannot be protected by the business judgment rule.

## COUNT I

**Against Defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell for Breach of Fiduciary Duties of Loyalty and Good Faith in Connection with Violating the Plan**

53. Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

54. As alleged in detail herein, each of the Individual Defendants, by reason of their positions as fiduciaries of the Company, owed to the Company the duties of undivided loyalty and good faith, and had a fiduciary duty to, among other things, exercise in good faith in

ensuring that the Company complied with all applicable federal and state laws, rules, regulations and requirements and the Company's governing documents, *e.g.*, the Plan, including acting only within the scope of their legal authority.

55.     Defendants Begley, Brown, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell breached their fiduciary duties of loyalty and good faith by granting defendant Hamburger a total of 159,725 stock options in excess of the 150,000 per person per year limit and in deliberate violation of the Plan, as alleged herein.

56.     The Company was damaged as a direct and proximate result of defendants Begley, Brown, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell's foregoing breaches of fiduciary duties, as alleged herein.

## COUNT II

**Against Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell for Breach of Fiduciary Duties for Disseminating False and Misleading Statements**

57.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

58.     As alleged in detail herein, defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell owed the Company the fiduciary duties of loyalty, good faith and candor.

59.     Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell breached their fiduciary duties of loyalty, good faith and candor, as alleged herein, by disseminating the 2012 Proxy, which they knew contained material omissions regarding the violation of the Plan in connection with the *ultra vires* stock option awards to defendant Hamburger and false and misleading statements regarding the tax deductibility of gains on the exercise of such stock options.

60.     As a direct and proximate result of the foregoing breaches of fiduciary duties, DeVry is entitled to equitable and injunctive relief, including, but not limited to, an order invalidating the shareholder vote on the election of defendants Huston, Keevan and Logan and the advisory vote on executive compensation.

## COUNT III

### Against Defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell for Waste of Corporate Assets

61.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

62.     Defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell, as members of the Compensation Committee and Independent Directors, had a duty to ensure that their compensation decisions did not create an unwarranted risk of non-compliance with the law and the Company's governing documents.  Nevertheless, fully aware of the 150,000 share limit, they granted stock options to defendant Hamburger in excess thereof and in violation of the Plan.

63.     Defendants Begley, Brown, Butler, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro and Wardell wasted corporate assets in the form of *ultra vires* stock options, as alleged herein.

64.     As a direct and proximate result of the foregoing waste of corporate assets, DeVry has sustained damages, as alleged herein.

## COUNT IV

### Against Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell for Violation of Section 14(a) of the Securities Exchange Act

65.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

66.     Rule 14-A-9, promulgated pursuant to Section 14(a), provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14-A-9.

67.     The 2012 Proxy violated Section 14(a) and Rule 14-A-9 because it contained false and misleading statements regarding the tax deductibility of gains on the exercise of the stock options awarded to defendant Hamburger and omitted material information necessary in order to make the statements therein not false or misleading, specifically, that the Plan limited awards to 150,000 shares per person per year and the August 2010, 2011 and 2012 stock option awards to defendant Hamburger violated that limit.

68.     The misrepresentations and omissions in the 2012 Proxy were material and were an essential link in the election of defendants Huston, Keevan and Logan as directors of the Company and the advisory vote to approve the compensation paid to the Company's executive officers, including defendant Hamburger.

69.     As a direct and proximate result of the foregoing statutory violations, DeVry is entitled to equitable and injunctive relief, including, but not limited to, an order invalidating the shareholder vote on the election of defendants Huston, Keevan and Logan and the advisory vote on executive compensation.

## COUNT V

## Against Defendant Hamburger for Unjust Enrichment

70.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

71.     Defendant Hamburger received excessive and unwarranted grants of stock options in excess of the 150,000 per year limit and in violation of the Plan, as alleged herein.

72.     It would be unconscionable and against the fundamental principles of justice, equity and good conscience for defendant Hamburger to retain the excessive, unwarranted and *ultra vires* stock options he has received in violation of the Plan.

73.     To remedy Hamburger's unjust enrichment, the Court should enter an order compelling him to disgorge to the Company the excessive and unwarranted stock options he has received in violation of the Plan, as well as any proceeds he has derived therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

a.      Awarding the Company the amount of damages it sustained as a result of the Individual Defendants' breaches of fiduciary duties and waste of corporate assets;

b.      Ordering defendant Hamburger to disgorge to the Company the stock options he received in violation of the Plan, as well as any proceeds he has derived therefrom;

c.      Granting appropriate equitable relief to remedy the Individual Defendants' breaches of fiduciary duties and statutory violations;

d.      Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

e.      Granting such other and further relief as the Court deems just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated:  November 12, 2012

**LASKY & RIFKIND, LTD.**
Norman Rifkind
Amelia S. Newton

 /s/ Norman Rifkind_____
351 W. Hubbard St., Suite 401
Chicago, IL 60654
Tel: (312) 634-0057
Fax: (312) 634-0059


**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Kristen L. Ross
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

***Counsel for Plaintiff***

**VERIFICATION**

I, Jan Donnawell, hereby verify that I have authorized the filing of the attached Verified Shareholder Derivative Complaint, that I have reviewed the Verified Shareholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: _11/5/12_

_Jan Donnawell_