## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAN DONNAWELL, derivatively on behalf of DEVRY, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | No. 12 C 9074 |
| v. | ) ) | Judge George M. Marovich |
| DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, GARY BUTLER, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, JULIA A. McGEE, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR, and LISA W. WARDELL, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| DEVRY, INC., | ) ) | |
| Nominal Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jan Donnawell ("Donnawell") filed a shareholder derivative complaint against

individual defendants Daniel Hamburger ("Hamburger"), Christopher B. Begley, David S.

Brown, Gary Butler, Connie R. Curran, Darren R. Huston, William T. Keevan, Lyle Logan, Julia

A. McGee, Fernando Ruiz, Harold T. Shapiro, Ronald L. Taylor and Lisa W. Wardell and

against nominal defendant DeVry Inc. ("DeVry"). The individual defendants are members of the

Board of Directors of DeVry. Defendants have filed a motion to stay this case and a motion to

dismiss.  For the reasons set forth below, the Court denies the motion to stay and grants the motion to dismiss.

## I.    __Background__

At some point, DeVry adopted the Incentive Plan of 2005 and the Amended and Restated Incentive Plan of 2005 (the "2005 Plan").  Under the 2005 Plan, the company was allowed to award stock options to certain employees of the company.  The company could not, however, make an award of stock options under the 2005 Plan that exceeded 150,000 shares of DeVry stock per person per year.  Notwithstanding the limit in the 2005 Plan, DeVry granted CEO Daniel Hamburger ("Hamburger") stock options of 184,100 shares in August 2010, 170,200 shares in August 2011 and 255,425 shares in August 2012.

Based on these stock options awards, DeVry shareholder Milton Pfeiffer ("Pfeiffer") filed a shareholder derivative suit in the Circuit Court of DuPage County on October 15, 2012.  Pfeiffer alleged that the Board of DeVry breached its fiduciary duty in awarding stock options in excess of the limits of the 2005 Plan (Count I), that the stock option awards were a waste of corporate assets (Count II) and that the awards constituted unjust enrichment to CEO Hamburger (Count III).

Less than a month later, on November 12, 2012, plaintiff Donnawell filed her shareholder derivative suit here.  Donnawell, like Pfeiffer in state court, challenges the stock options awarded to Hamburger in amounts greater than 150,000 shares under the 2005 Plan.  Like Pfeiffer alleged in state court, Donnawell alleges that the Board members breached their fiduciary duty by granting awards in excess of 150,000 shares (Count I), that the Board members wasted corporate assets (Count III) and that the awards unjustly enriched Hamburger (Count V).  Donnawell also

makes two additional claims that Pfeiffer did not make in his state-court case. In Count IV, Donnawell asserts that the individual defendants violated Section 14(a) of the Securities Exchange Act by including false or misleading statements in a Form DEF 14A proxy statement (the "2012 Proxy") that it filed with the Securities and Exchange Commission ("SEC") and distributed to DeVry shareholders. Specifically, Donnawell alleges that "the 2012 Proxy was false and misleading because it falsely implied that that [sic] gains on the stock options awarded to defendant Hamburger will be entitled to tax deductibility under section 162(m), when in fact the violation of the 150,000 share limit put at risk the tax deductibility of such awards and the gains thereon." (Donnawell Complt. ¶ 41). In Count II, Donnawell alleges that defendants breached their fiduciary duty "by disseminating the 2012 Proxy, which they knew contained material omissions . . ." (Donnawell Complt. ¶ 59).

Defendants have filed two motions. First, defendants move the Court to stay this case on the grounds of *Colorado River* abstention. Second, defendants move to dismiss this suit. With respect to their motion to dismiss, defendants argue that three of Donnawell's claims are moot and that the other two fail to state a claim upon which relief may be granted.

In connection with defendants' argument that three claims are moot, defendants have admitted that Donnawell is correct that the 2005 Plan limited stock option awards to 150,000 shares per person per year. They have also admitted that DeVry erred by making stock option awards to Hamburger in excess of 150,000 per year under the 2005 Plan. Finally, defendants have put forth evidence that DeVry has already corrected the problem. Specifically, DeVry determined that the grants in excess of 150,000 were ineffective and proceeded to grant Hamburger stock options within the limits. Effectively, DeVry changed the grants so that

Hamburger was awarded stock options of 150,000 shares under the 2005 Plan for the year 2010;

150,000 shares under the 2005 Plan for the year 2011; and 150,000 shares under the 2005 Plan

for the year 2012.  In addition to the awards under the 2005 Plan, DeVry also granted Hamburger

stock options of 87,910 shares for the year 2012 under a different plan, the 2003 Stock Incentive

Plan.

 Finally, the Court takes judicial notice of the fact that, on or about June 7, 2013, a state-

court judge decided that Pfeiffer's state-court claims are moot and that the case will be dismissed

after the judge rules on Pfeiffer's motion for attorneys' fees.

## II. Discussion

### A. Motion to stay

 Defendants ask the Court to abstain from hearing this case because a similar case is

pending at the Circuit Court of DuPage County.  The Court may, under certain circumstances,

abstain from hearing a case over which it has jurisdiction.  In *Colorado River Water*

*Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court explained that:

> there are principles unrelated to considerations of proper constitutional
> adjudication and regard for federal-state relations which govern in situations
> involving the contemporaneous exercise of concurrent jurisdictions, either by
> federal courts or by state and federal courts.  These principles rest on
> considerations of '[w]ise judicial administration, giving regard to conservation of
> judicial resources and comprehensive disposition of litigation.'  *Generally, as
> between state and federal courts, the rule is that 'the pendency of an action in the
> state court is no bar to proceedings concerning the same matter in the Federal
> court having jurisdiction.*

*Colorado River*, 424 U.S. at 817 (internal citations omitted) (emphasis added).  The reason the

state suit is no bar to the federal suit is "the virtually unflagging obligation of the federal courts

to exercise the jurisdiction given them."  *Id*.  The "duty to exercise jurisdiction rests on 'the

undisputed constitutional principal that Congress, *and not the Judiciary*, defines the scope of federal jurisdiction within the constitutionally permissible bounds.'" *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989)).

In *Colorado River*, the Supreme Court noted that it would be appropriate for the federal court to abstain if the state suit involved property. It also explained that "a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums." *Colorado River*, 424 U.S. at 818. "Only the clearest of justifications will warrant dismissal." *Id.* at 819.

Before it abstains, a district court must consider whether the two suits are parallel. If they are, the court considers, "(1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained in the concurrent forums; (5) the source of governing law; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexation or contrived nature of the federal claim." *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003). In *AXA*, the Seventh Circuit noted that the long list of factors created a risk of inconsistent results but that the Supreme Court "has effectively told courts how those factors should be weighed" by emphasizing the obligation to exercise jurisdiction. *AXA*, 347 F.3d at 278. The Seventh Circuit, thus, has reaffirmed the Supreme Court's admonition "not to stay or

dismiss actions without strong justification to do so" and has "recognized a general presumption against abstention." *AXA*, 347 F.3d at 278 & 279. In addition, where a plaintiff has alleged a claim within the exclusive jurisdiction of the federal courts, it is not appropriate for the federal court to abstain. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 500 (7th Cir. 2011) ("Our precedent holds that 'where a plaintiff's nonfrivolous claim invokes the exclusive jurisdiction of federal courts, the *Colorado River* stay is not appropriate.'") (quoting *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 215 (7th Cir. 1988)).

The Court first considers whether the two suits are parallel and concludes that they are not. Unquestionably, the two cases are similar. Although the plaintiffs are different, the parties are essentially the same, because the two plaintiffs are proceeding derivatively as shareholders. In addition, in both cases, the plaintiffs make nearly identical claims with respect to the stock options awards in excess of 150,000 shares. The federal case, however, also includes two additional claims, one of which (Count IV) is within the exclusive jurisdiction of federal courts. Thus, as the Seventh Circuit explained in *Adkins*, the suits are not fully parallel and *Colorado River* abstention is inappropriate.

Even if the cases were parallel, however, the Court still would not abstain from hearing this case, because abstention is supposed to be the exception, not the rule. None of the relevant factors cuts strongly in favor of abstention. First, the cases do not involve property. If they did, that fact would cut in favor of abstention, because disposition of property is better handled in a single proceeding. That the cases do not involve property cuts against abstention. Next, it is just as convenient to litigate in this building as it is to litigate in DuPage County, a few dozen miles down the road. It is desirable, in every case, to avoid piecemeal litigation, so this factor does not

suggest this case is exceptional. Finally, although this case was filed second, that will be true perhaps 50% of the time when a federal and a state court are exercising contemporaneous jurisdiction. Something that happens 50% of the time is not extraordinary. In short, nothing about this case overcomes the virtually unflagging obligation to exercise jurisdiction.

Defendants' motion to stay is denied.

### B. Defendants' motion to dismiss

In their motion to dismiss, defendants argue that Counts I, III and V should be dismissed for lack of subject matter jurisdiction, because the claims are moot. Defendants argue that Counts II and IV should be dismissed for failure to state a claim.

### 1. Mootness

Defendants move pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss three of plaintiff's claims on the grounds that they are moot. This Court lacks subject matter jurisdiction over moot claims and, therefore, must dismiss such claims. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007).

In Counts I, III and V, plaintiff alleges that DeVry violated the 2005 Plan by awarding Hamburger stock options for more than 150,000 shares for the years 2010, 2011 and 2012. Defendants argue that these claims are moot, because DeVry has corrected the awards, such that it granted Hamburger stock options for only 150,000 shares under the 2005 Plan for each of the years 2010, 2011 and 2012.

Plaintiff agrees that part of those claims are moot. Specifically, plaintiff agrees that DeVry has corrected the awards for 2010 and 2011 and that, therefore, her claims are moot with respect to the years 2010 and 2011.

-7-

Plaintiff does not, however, agree with defendants that her claims with respect to the year 2012 are moot. Plaintiff points out that Hamburger was awarded stock options for 237,910 shares for the year 2012, but defendants have put forth evidence that some of those options were awarded under a different plan. Specifically, defendants have put forth evidence that stock options for only 150,000 shares were awarded under the 2005 Plan for the year 2012 and that the stock options for the remaining 87,910 shares were awarded under a separate plan (the 2003 Incentive Plan) that plaintiff does not challenge. Plaintiff argues that the Court cannot consider defendants' evidence at this stage of the case and that, instead, the Court must accept as true plaintiff's complaint allegation that all stock option awards to Hamburger for the year 2012 were made under the 2005 Plan. Plaintiff is mistaken about the evidence the Court may consider. When considering whether it has subject matter jurisdiction, a "district court may consider whatever evidence has been submitted on this issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ*, 502 F.3d at 625. Thus, the Court may consider the evidence defendants submitted.

Based on the evidence submitted to this Court, the Court agrees with defendants that plaintiff's Counts I, III and V are moot. Defendants have put forth evidence that DeVry has corrected the stock option awards to Hamburger such that Hamburger has been granted stock options for 150,000 shares under the 2005 Plan for each of the years 2010, 2011 and 2012. That is exactly what plaintiff requested in Counts I, III and V. Accordingly, those claims are moot and are hereby dismissed for lack of jurisdiction. The Court notes that this conclusion is consistent with the decision recently reached by the judge in the related state-court case.

### 2.     Motion to dismiss

That leaves two claims, both of which are brought derivatively and assert that the defendants made misstatements in the 2012 Proxy.  In Count IV, Donnawell asserts that the individual defendants violated Section 14(a) of the Securities Exchange Act by including false or misleading statements in the 2012 Proxy.  Specifically, Donnawell alleges that "the 2012 Proxy was false and misleading because it falsely implied that that [sic] gains on the stock options awarded to defendant Hamburger will be entitled to tax deductibility under section 162(m), when in fact the violation of the 150,000 share limit put at risk the tax deductibility of such awards and the gains thereon."  (Donnawell Complt. ¶ 41).  In Count II, Donnawell alleges that defendants breached their fiduciary duty "by disseminating the 2012 Proxy, which they knew contained material omissions . . ."  (Donnawell Complt. ¶ 59).

Defendants argue that these claims should be dismissed, because plaintiff failed to make a pre-suit demand and failed to allege sufficiently that pre-suit demand would have been futile.  Rule 23.1(b) of the Federal Rules of Civil Procedure states that a derivative complaint must:

> (3)     state with particularity:
>
> > (A)     any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and
> >
> > (b)     the reasons for not obtaining the action or not making the effort.

Fed.R.Civ.P. 23.1(b)(3).  The law of the state of incorporation determines whether demand may be excused as futile.  *In re Abbott Depakote Shareholder Deriv. Lit'n*, Case No. 11 C 8114, 2013 WL 2451152 at *4 (N.D. Ill. June 5, 2013).  The parties agree that state is Delaware.

The parties also agree that, under Delaware law, to determine whether a demand would have been futile, a judge must consider "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent; and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). To show a reasonable doubt as to the first prong of the *Aronson* test, plaintiff "must undertake a 'director-by-director analysis' showing that the majority of the Board was incapable, due either to a material personal interest or domination and control, of objectively evaluating a demand, if made." *Raul v. Rynd*, __ F. Supp.2d __, 2013 WL 1010290 at *10 (D. Del. March 14, 2013). Plaintiff has not done so here. She has included no allegations as to what each director had to gain by making misstatements about the tax deductibility of Hamburger's stock options. Nor has she included any allegations suggesting that the directors were under Hamburger's control.

With respect to the second prong, plaintiff argues that demand is excused because she has alleged that the directors improperly approved stock options for excessive amounts of shares despite the 2005 Plan's prohibition. This is irrelevant, because the three claims (Counts I, III and V) that challenge the excessive stock-option awards have been dismissed as moot. The claims with respect to which plaintiff needs to allege demand futility are the misstatement claims (Counts II and IV). Plaintiff does not so much as argue that she has alleged demand futility with respect to the misstatement claims. The Court can find no facts in the complaint that create a reasonable doubt that the 2012 Proxy was a result of a valid exercise of business judgment.

Accordingly, plaintiff has failed to allege demand futility with particularity, and Counts II and IV must be dismissed. Because it is conceivable that plaintiff could correct the defect

with an amendment, the Court will grant plaintiff 28 days to file an amended complaint, should she so choose.

**III.** **Conclusion**

For the reasons set forth above, the Court denies defendants' motion to stay. The Court grants defendants' motion to dismiss. Counts I, III and V are moot and are dismissed for lack of jurisdiction. Counts II and IV are dismissed without prejudice. Plaintiff is granted 28 days in which to amend Counts II and IV, should she so choose.

ENTER:

George M. Marovich
United States District Judge

DATED: June 25, 2013