**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JAN DONNAWELL, Individually, on Behalf of All Others Similarly Situated, and Derivatively on Behalf of Nominal Defendant DEVRY INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, JULIA A. MCGEE, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR and LISA W. WARDELL, <br><br> Defendants, <br><br> and <br><br> DEVRY INC., <br><br> Nominal Defendant. | **Case No. 12-cv-9074** |

### VERIFIED AMENDED CLASS ACTION AND DERIVATIVE COMPLAINT

Plaintiff Jan Donnawell ("Plaintiff"), by her undersigned attorneys, submits this Verified Amended Class Action and Derivative Complaint against the defendants named herein, and alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, a review of public filings, press releases and reports, an investigation undertaken by Plaintiff's counsel, as to all other allegations herein, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action on her own behalf, on behalf of a class of stockholders of DeVry Inc. ("DeVry" or the "Company") and derivatively on behalf of DeVry against certain

of DeVry's current and former executive officers and members of its Board of Directors (the "Board") seeking to remedy defendants' breaches of fiduciary duties and other violations of law.

2.      In gross breach of their fiduciary duties as directors of the Company, the members of the Board's Compensation Committee (the "Compensation Committee") knowingly granted, and the independent members of the Board (the "Independent Directors") knowingly approved, awards of stock options to DeVry's President and Chief Executive Officer ("CEO") Daniel Hamburger ("Hamburger") in deliberate violation of the Company's Incentive Plan of 2005 and Amended and Restated Incentive Plan of 2005 (collectively, the "2005 Plan").

3.      The 2005 Plan allows the Compensation Committee to grant cash incentives and equity awards, including stock options, to executive officers, employees and directors of the Company.  The Independent Directors approve all compensation decisions for defendant Hamburger, including equity grants under the 2005 Plan.  While these directors have the authority to make and approve equity awards to the CEO under the 2005 Plan, their discretion in exercising such authority is not unlimited.  Rather, the 2005 Plan, as approved by DeVry's stockholders, specifically prohibits the award of stock options relating to more than 150,000 shares of DeVry common stock to any one person in any fiscal year.[1]

4.      In blatant violation of this limit, in 2008, 2010, 2011 and 2012, the Compensation Committee granted, and the Independent Directors approved, awards of stock options to defendant Hamburger for more than 150,000 shares of DeVry common stock.  Specifically, on August 28, 2008, August 27, 2010, August 24, 2011 and August 29, 2012, the Compensation Committee granted and the Independent Directors approved awards of 195,200, 184,100, 170,200, and 255,425 stock options, respectively, to defendant Hamburger.

---

[1] Originally, the limitation applied to awards made to any one person in any calendar year.  The limitation was amended in 2010 to apply to awards made to any one person in any fiscal year.

5.      As a direct and proximate result of Plaintiff's commencement and prosecution of this action, the Board rescinded all of Hamburger's excess awards for 2008, 2010, and 2011, and thus mooted Plaintiff's claims with regard to those awards.

6.      With regard to Hamburger's excess award for 2012, however, the Board rescinded only 17,515 stock options on the basis that 87,910 of the 255,425 options awarded to Hamburger on August 29, 2012 (the "87,910 Options") purportedly were awarded not under the 2005 Plan, but instead under DeVry's Stock Incentive Plan of 2003 (the "2003 Plan"), and therefore did not count against the 2005 Plan's 150,000 share limit.

7.      In reality, the Independent Directors did not designate the 87,910 Options as having been awarded under the 2003 Plan until after Plaintiff commenced this action.

8.      At the time the award of 255,425 options to defendant Hamburger was made on August 29, 2012, neither the Independent Directors nor the Compensation Committee designated any portion of the award as having been made under the 2003 Plan nor had any intention of doing so.  Indeed, they had not made a single award to any executive under the 2003 Plan since 2007 and had no reason to do so on August 29, 2012.

9.      The Independent Directors' retroactive designation of the 87,910 Options as having been awarded under the 2003 Plan was phony and in bad faith, as their sole purpose in so doing was to avoid their own liability in this action.

10.     In addition to the foregoing, on October 5, 2012, in connection with DeVry's 2012 annual meeting of stockholders, the Board, as a further and separate breach of fiduciary duties, filed with the Securities and Exchange Commission ("SEC") and disseminated to DeVry stockholders a Form DEF 14A proxy statement (the "2012 Proxy") containing false and misleading statements and omitting material information regarding the awards of stock options in

excess of the Plan's limitations. The 2012 Proxy's representation that gains on exercises of the stock option awards to Hamburger were eligible for tax deductibility under Section 162(m) of the Internal Revenue Code ("Section 162(m)") and failure to disclose that the stock option awards to Hamburger violated the 2005 Plan was a material misrepresentation in the solicitation of votes for the election of DeVry's directors, including several Compensation Committee members and Independent Directors, and in the solicitation of votes to approve the compensation paid to DeVry's executive officers, including defendant Hamburger.

11. Through this action, Plaintiff seeks to recover for the Company the damages caused by the misconduct alleged herein and to invalidate the tainted 2012 stockholder vote and require defendants to hold a new vote after making proper disclosures.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) in that Plaintiff and Defendants are citizens of different states, and with respect to certain of the Defendants, of foreign states, and the matter in controversy exceeds $75,000, exclusive of interest and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is not a collusive action designed to confer jurisdiction on a court of the United States which it would not otherwise have.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because nominal defendant DeVry is headquartered in this District. In addition, a substantial portion of the occurrences complained of herein occurred in this District and one or more of the Defendants either resides in, or maintains offices in, this District.

## PARTIES

14.     Plaintiff is a stockholder of DeVry, was a stockholder of DeVry at the time of the wrongdoing alleged herein, and has been a stockholder of DeVry continuously since that time. Plaintiff is a citizen of the State of Texas.

15.     Nominal defendant DeVry is a Delaware corporation with its principal place of business located at 3005 Highland Parkway, Downers Grove, Illinois, and thus is a citizen of Delaware and Illinois.  Shares of DeVry's common stock are traded on the NYSE under the ticker symbol "DV."  According to its public filings, DeVry is "a global provider of educational services" and its "institutions offer a wide array of programs in business, healthcare and technology and serve students in secondary through postsecondary education as well as accounting and finance professionals."

16.     Defendant Hamburger has served as President, CEO, and a director of DeVry since November 2006.  Upon information and belief, defendant Hamburger is a citizen of the State of Illinois.

17.     Defendant Christopher B. Begley ("Begley") has served as a director of DeVry and as a member of the Compensation Committee since November 2011.  Upon information and belief, defendant Begley is a citizen of the State of Illinois.

18.     Defendant David S. Brown ("Brown") has served as a director of DeVry since November 1987.  Upon information and belief, defendant Brown is a citizen of the State of Illinois.

19.     Defendant Connie R. Curran ("Curran") has served as a director of DeVry since November 2003 and as a member of the Compensation Committee since 2010.  Upon information and belief, defendant Curran is a citizen of the State of Illinois.

20.     Defendant Darren R. Huston ("Huston") has served as a director of DeVry since November 2009.  Upon information and belief, defendant Huston is a citizen of the Netherlands.

21.     Defendant William T. Keevan ("Keevan") has served as a director of DeVry since November 2005 and as a member of the Compensation Committee since 2010.  Upon information and belief, defendant Keevan is a citizen of the State of Maryland.

22.     Defendant Lyle Logan ("Logan") has served as a director of DeVry since November 2007.  Upon information and belief, defendant Logan is a citizen of the State of Illinois.

23.     Defendant Julia A. McGee ("McGee") served as a director of DeVry from November 1994 to November 7, 2012 and as Chair of the Compensation Committee from 2010 through 2012.  Upon information and belief, defendant McGee is a citizen of the State of New York.

24.     Defendant Fernando Ruiz ("Ruiz") has served as a director of DeVry since November 2005.  Upon information and belief, defendant Ruiz is a citizen of the State of Michigan.

25.     Defendant Harold T. Shapiro ("Shapiro") has served as a director of DeVry since November 2001 and as Chairman of the Board since November 2008.  Upon information and belief, defendant Shapiro is a citizen of the State of New Jersey.

26.     Defendant Ronald L. Taylor ("Taylor") has served as a Senior Advisor to DeVry since November 2006 and as a director of DeVry since November 1987.  Previously, he served as DeVry's CEO from July 2004 to November 2006 and as its President and Chief Operating Officer from August 1987 to November 2002.  Upon information and belief, defendant Taylor is a citizen of the State of Illinois.

27. Defendant Lisa W. Wardell ("Wardell") has served as a director of DeVry since November 2008. Upon information and belief, defendant Wardell is a citizen of the State of Maryland.

28. The defendants identified in paragraphs 16-27 are referred to collectively herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

29. By reason of their positions as officers and/or directors of DeVry and because of their ability to control the business and corporate affairs of DeVry, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of DeVry and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of DeVry owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

30. To discharge their duties, the Individual Defendants, as officers and directors of the Company, were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the Individual Defendants were required to, among other things:

    a. exercise good faith to ensure that the affairs of the Company were conducted in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business;

    b. exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules and regulations and requirements and the Company's

governing documents, *e.g.*, the 2005 Plan, including acting only within the scope of their legal authority;

c.    refrain from wasting the Company's assets or otherwise unduly benefiting themselves and other Company insiders at the expense of the Company; and

d.    make full, fair, and accurate disclosures to stockholders.

31.    As set forth in the Company's proxy statements, the Independent Directors (defendants Begley, Brown, Curran, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Wardell) were responsible for approving the compensation paid to DeVry's CEO. The members of the Compensation Committee (defendants Begley, Curran, Keevan, and McGee) were responsible for properly administering the 2003 and 2005 Plans and recommending the compensation to be paid to the CEO to the independent directors for approval. Specifically, the Compensation Committee members were required to comply with the obligations set forth in the Compensation Committee Charter, which provides that the Compensation Committee's primary responsibilities include:

1.    **Board Compensation**. Periodically review the compensation paid to nonemployee directors and make recommendations to the Board for any adjustments. No member of the Committee will act to fix his or her own compensation except for uniform compensation to directors for their services as a director.

2.    **Chief Executive Officer Compensation**.

(a)    Assist the other independent members of the Board in establishing CEO annual goals and objectives.

(b)    Recommend CEO compensation to the other independent members of the Board for approval.

(i)    In making this recommendation, consider the results of the annual CEO evaluation led by the Chair of the Board.

(ii)    In determining the long term incentive component of the CEO's compensation, the Committee shall consider, among other factors, DeVry's performance and relative stockholder return, the value of similar incentive awards to CEOs at

comparable companies, the awards given to the CEO in past years, the CEO's expected future contributions, and any other factors the Committee deems appropriate.

(iii)     The CEO may not be present during deliberations or voting concerning the CEO's compensation.

3.     **Other Executive Officer Compensation**.

(a)     Review eligibility criteria and award guidelines for DeVry's compensation programs in which the CEO and Senior Leadership Team members participate, including all forms of long-term incentive compensation.

(b)     Review recommendations made by the CEO for "Named Executive Officers" (as defined in Item 402(a)(3) of Regulation S-K promulgated by the SEC and provide guidance regarding annual compensation, including base salary, annual incentive and equity compensation and perquisites. Approve all long term incentive grants delivered in the form of options. Periodically review and provide input into other Senior Leadership Team members' compensation recommendations.

(c)     Review the structure and competitiveness of DeVry's executive officer compensation programs considering the following factors: (i) the attraction and retention of executive officers; (ii) the motivation of executive officers to achieve DeVry's academic and business objectives; and (iii) the alignment of the interests of executive officers with the longterm interests of DeVry's stockholders.

(d)     Review and approve DeVry's peer companies and data sources for purposes of evaluating compensation competitiveness and establishing the appropriate competitive positioning of the levels and mix of compensation elements.

(e)     Approve the form of employment agreements for DeVry's CEO and other Senior Leadership Team members. In connection with reviewing proposed employment agreements for such executives, the Committee shall receive information regarding, among other things, the terms of the agreement, competitive practices, and the potential financial implications of the employment agreement.

4.     **General Compensation Oversight**. Monitor and evaluate matters relating to the compensation structure of DeVry as the Committee deems appropriate, including:

(a)     Review and approve the total pay-out of short and long term incentive pools.

(b)     Provide guidance to management on significant issues affecting compensation philosophy or policy.

(c)     Review and approve policies regarding CEO and Senior Leadership Team compensation.

(d)     Review and approve total pay-out for the annual Success Sharing contribution.

(f)[sic] Oversee risks and exposures related to employee compensation programs and management succession planning, including assessing whether the DeVry's compensation practices encourage risk taking that would have a material adverse effect on DeVry.

5.     **Compensation Consultant Oversight**.

Retain independent compensation consultants that advise the Committee, as it deems appropriate, including approval of the consultants' fees and other retention terms.  The role of all outside consultants involved in the compensation process is purely advisory in nature.  The Committee retains ultimate responsibility for its' compensation-related decisions.

6.     **Disclosure**.  Discuss with management DeVry's Compensation Discussion and Analysis ("CD&A") for the annual proxy statement; based on the review and discussion, recommend to the Board that the CD&A be included in DeVry's annual report or annual proxy statement; and produce an annual report of the Committee on executive compensation for DeVry's annual proxy statement in compliance with and to the extent required by applicable SEC rules and regulations and relevant listing authorities.

7.     **Other Responsibilities**.

(a)     Regularly review and make recommendations to the Board about changes to the charter of the Committee.

(b)     Perform an annual evaluation of the Committee's performance and make applicable recommendations.

(c)     Approve any new executive compensation plan or any material change to an existing executive compensation plan whether or not subject to stockholder approval.

(d)     Make recommendations to the Board with respect to any recoupment or "clawback" policies.

(e)     Make recommendations to the Board with respect to any position to be taken by the Board regarding "say on pay" votes and the frequency of such votes.

(f)     Make recommendations to the Board with respect to any policy regarding hedging investments in stock of DeVry by directors, officers and employees of DeVry.

32.     Additionally, the Individual Defendants, as well as all employees, officers and directors of DeVry, were and are required to comply with the Company's Code of Conduct and Ethics ("Code of Conduct").  According to the Code of Conduct, the Individual Defendants must "fully comply with all laws, external accounting requirements, and DeVry policies and procedures for reporting financial and other organizational information" and "never deliberately make a false or misleading entry in a report or record."

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

## SUBSTANTIVE ALLEGATIONS

### The 2003 and 2005 Plans

34.     The 2003 Plan, which DeVry's stockholders approved at the Company's annual meeting on November 18, 2003, authorized the granting of options to purchase up to 2,000,000 DeVry shares to Company personnel.

35.     Two years later, when DeVry had used roughly half of the 2,000,000 options authorized under the 2003 Plan, the Board adopted the 2005 Plan, which the Company's stockholders approved at DeVry's annual meeting on November 9, 2005.   The Board

subsequently amended the 2005 Plan, and DeVry's stockholders approved the amendments at DeVry's annual meeting on November 10, 2010.

36.     The 2005 Plan, as amended in 2010, authorizes the granting of 6,000,000 shares in the form of, among other things, stock options.  The stated purpose of the 2005 Plan is "(i) to encourage outstanding individuals to accept or continue employment with DeVry Inc… and its subsidiaries or to serve as directors of DeVry, and (ii) to furnish maximum incentive to those persons to improve operations and increase profits and to strengthen the mutuality of interest between those persons and DeVry's stockholders by provided them stock options and other stock and cash incentives."

37.     The 2005 Plan provides for awards to employees, officers and directors of DeVry in the form of stock options, stock appreciation rights, restricted stock, restricted stock units, performance stock, performance cash awards, annual management incentive awards and other stock or cash awards.

38.     The 2005 Plan is administered by the Compensation Committee, and, as stated in the Company's proxy statements, the Compensation Committee "made all final compensation decisions with respect to long term incentive grants to NEOs other than Mr. Hamburger.  The independent members of the Board approved all compensation decisions for Mr. Hamburger," including the stock options granted pursuant to the 2005 Plan.

39.     The 2005 Plan expressly limits the equity awards that may be granted thereunder. The original version of the 2005 Plan stated that "[u]nder the Plan, no participant may receive in any calendar year (i) Stock Options relating to more than 150,000 shares, (ii) Restricted Stock or Restricted Stock Units relating to more than 50,000 shares, (iii) Stock Appreciation Rights

relating to more than 125,000 shares, or (iv) Performance Shares relating to more than 50,000 shares."

40.     The amended and restated version of the 2005 Plan contains the same limitations, except that such limits apply to the awards that can be made to any one participant in any fiscal year, instead of any calendar year.  DeVry's fiscal year ends on June 30th.

41.     Neither the Independent Directors nor the Compensation Committee has made any awards of compensation to any executive officers under the 2003 Plan since 2007.

### Defendants' Violations of the 2005 Plan

42.     Despite the Plan's clear limit of 150,000 stock options per person per fiscal year, the Company's public filings disclose that in August of 2008, 2010, and 2011, the Compensation Committee granted, and the Independent Directors approved, awards of stock options to defendant Hamburger, purportedly pursuant to the 2005 Plan, as follows:

| Grant Date | Stock Options Granted |
|---|---|
| August 28, 2008 | 195,200 |
| August 27, 2010 | 184,100 |
| August 24, 2011 | 170,200 |

43.     The August 28, 2008 award exceeded the 150,000 share limit for calendar year 2008 by 45,200 shares; the August 27, 2010 award exceeded the 150,000 share limit for calendar year 2010 by 34,100 shares; and the August 24, 2011 award exceeded the 150,000 share limit for fiscal year 2012 by 20,200 shares.

44.     The members of the Compensation Committee and the Independent Directors knew the 2005 Plan limited stock option awards to 150,000 shares per person per year, yet they deliberately violated this limit by granting and approving the foregoing excessive awards to defendant Hamburger.

## The 2012 Award to Defendant Hamburger

45.     In addition to the foregoing violations of the 2005 Plan, on August 29, 2012, Compensation Committee members Begley, Curran, Keevan, and McGee granted, and Independent Directors Begley, Curran, Keevan, McGee, Brown, Huston, Logan, Ruiz, Shapiro and Wardell approved, an award to defendant Hamburger of 255,425 stock options.

46.     At the time the award of 255,425 options to defendant Hamburger was made on August 29, 2012, neither the Independent Directors nor the Compensation Committee designated any portion of the award as having been made under the 2003 Plan nor had any intention of doing so.  Indeed, they had not made a single award under the 2003 Plan since 2007 and had no reason to do so on August 29, 2012, as at that time there were more than 3,000,000 shares available under the 2005 Plan.

47.     On August 31, 2012, Hamburger filed with the SEC a Form 4 reporting his receipt of the 255,425 options awarded on August 29, 2012.  Notably, the Form 4 did not identify any of the options as having been awarded under the 2003 Plan.

48.     According to DeVry's 2012 Proxy Statement, as of June 30, 2012, there remained 98,110 shares available under the 2003 Plan.  It would have made no sense for the Independent Directors or the Compensation Committee two months later to award Hamburger the 87,910 Options under the 2003 Plan, leaving 10,200 shares available under the 2003 Plan.

49.     The truth is that the Independent Directors did not designate the 87,910 Options as having been awarded under the 2003 Plan until months later, after Plaintiff commenced this action seeking to hold the Independent Directors liable for violating the 2005 Plan in connection with the August 29, 2012 award to Hamburger.

**Defendants Genuinely Moot Some of Plaintiff's Claims and Falsely Moot Others**

50.    On December 17, 2012, four weeks after Plaintiff commenced this action alleging, among other things, that the members of the Compensation Committee and the Independent Directors breached their fiduciary duties and wasted corporate assets by making and approving awards of compensation to defendant Hamburger in violation of the 2005 Plan and that Hamburger was unjustly enriched as a result thereof, DeVry filed with the SEC revised Form 4 filings with regard to Hamburger's 2008, 2010, 2011, and 2012 stock option awards stating the that the Board had rescinded certain portions of those awards.

51.    Hamburger's revised Form 4 with regard to his 2008 options award stated:

> As previously reported on a Form 4 filed on September 2, 2008 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 45,200 shares of common stock were not validly granted pursuant to the DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

52.    Hamburger's revised Form 4 with regard to his 2010 options award stated:

> As previously reported on a Form 4 filed on August 31, 2010 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 34,100 shares of common stock were not validly granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they, together with 2,584 Incentive Stock Options granted simultaneously with the NQSOs, exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is

filing this amendment to report the correct amount of stock options acquired.

53.     Hamburger's revised Form 4 with regard to his 2011 options award stated:

As previously reported on a Form 4 filed on August 26, 2011 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase shares of common stock. However, DeVry Inc. subsequently determined that NQSOs to purchase 20,200 shares of common stock were not validly granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan because they, together with 2,388 Incentive Stock Options granted simultaneously with the NQSOs, exceeded the limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

54.     Thus, directly in response to Plaintiff's commencement and prosecution of this action, the Board rescinded all of Hamburger's excess awards for 2008, 2010, and 2011, and thereby mooted Plaintiff's claims with regard to those awards.

55.     Unlike the revised Form 4 filings with regard to Hamburger's 2008, 2010, and 2011 awards, the revised Form 4 with regard to Hamburger's 2012 award did not acknowledge the full extent to which that award exceeded the 150,000 shares per person limit.  Rather, the revised Form 4 with regard to Hamburger's 2012 award claimed that:

As previously reported on a Form 4 filed on August 31, 2012 by the reporting person, the reporting person reported acquiring Non-Qualified Stock Options (NQSOs) to purchase 250,049 shares of common stock. However, DeVry Inc. subsequently determined that, after issuing NQSOs to purchase 87,910 shares of common stock under DeVry Inc.'s 2003 Stock Incentive Plan (with all NQSOs in excess of such amount to be granted pursuant to DeVry Inc.'s Amended and Restated 2005 Incentive Plan (the "2005 Plan")), NQSOs to purchase 17,515 shares of common stock were not validly granted pursuant to the 2005 Plan because they, together with 5,376 Incentive Stock Options granted simultaneously with the NQSOs under the 2005 Plan, exceeded the

limit on the number of stock options that may be granted to any individual participant one year period. Accordingly, the attempted grant of these excess stock options was ineffective, and they were never granted to the reporting person. The reporting person is filing this amendment to report the correct amount of stock options acquired.

56.     The revised Form 4 with regard to Hamburger's 2012 award falsely and misleadingly implied that the 87,910 Options designated as having been awarded under the 2003 Plan had been so designated contemporaneously with the making of the award on August 29, 2012, and falsely and misleadingly failed to disclose that (i) the Independent Directors did not designate the 87,910 Options as having been awarded under the 2003 Plan until after Plaintiff commenced this action; and (ii) they did so for the sole purpose of avoiding their own liability in this action.

57.     The Independent Directors retroactively designated the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of being able to argue that those options did not count against the 2005 Plan's 150,000 shares per person limit and therefore did not have to be rescinded in order to moot Plaintiff's claims regarding Hamburger's August 29, 2012 options award.

58.     The Independent Directors' foregoing misconduct was in gross breach of their fiduciary duties as directors of DeVry, as these defendants knowingly, deliberately, and in bad faith manipulated the designation of the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of avoiding liability in this action and thereby advantaging themselves at the expense of the Company.

59.     As a direct and proximate result of the Independent Directors' foregoing misconduct, DeVry has sustained damages, including, but not limited to, the value of the 87,910 Options they in bad faith retroactively designated as having been awarded under the 2003 Plan.

-17-

## The False and Misleading 2012 Proxy

60.     Awards of compensation to DeVry officers are entitled to tax deductibility pursuant to Section 162(m) only if the awards comply with the terms of a stockholder-approved compensation plan.

61.     By violating the 150,000 share limit with regard to the 2008, 2010, and 2011 awards to defendant Hamburger, the Compensation Committee and the Independent Directors rendered those awards ineligible for tax deductibility under Section 162(m).

62.     Notwithstanding the clear violations of the 2005 Plan, nowhere in the 2012 Proxy (nor in any other public filing prior to the amended Form 4 filings on December 17, 2012) did the Board or the Compensation Committee disclose that the Compensation Committee and the Independent Directors had violated the 2005 Plan or that the violations rendered those awards ineligible for tax deductibility under Section 162(m).

63.     DeVry stockholders are entitled to rely on the truth of representations made in the Board's proxy materials relating to executive compensation.

64.     The Board had control over the statements made in the 2012 Proxy and had actual knowledge of those statements.

65.     The 2012 Proxy was false and misleading because it falsely stated that gains on the stock options awarded to defendant Hamburger would be entitled to tax deductibility under Section 162(m), when in fact the violations of the 150,000 share limit with regard to Hamburger's 2008, 2010, and 2011 option awards rendered those awards ineligible for tax deductibility under Section 162(m).  Specifically, the 2012 Proxy falsely and misleadingly stated that "[g]ains on the exercise of stock options . . . qualify as performance-based compensation under Section 162(m)," but did not disclose that the gains on the exercise of the stock options

awarded to Hamburger in 2008, 2010, and 2011 did not qualify as performance-based compensation under Section 162(m) because those awards violated the terms of the 2005 Plan.

66.     The 2012 Proxy contained material misstatements and omissions of material fact concerning the stock option awards to the Company's CEO.  Accordingly, the 2012 Proxy was materially false and misleading and unlawfully deprived DeVry stockholders of their right to cast a fully informed vote at the annual meeting, especially with respect to the reelection of defendants Huston, Keevan, and Logan, each of whom approved the excessive awards, and the advisory vote on executive compensation, including the compensation paid to defendant Hamburger.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

67.     Plaintiff brings certain claims in this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

68.     Plaintiff is a stockholder of DeVry, was a stockholder of DeVry at the time of the wrongdoing alleged herein, and has been a stockholder of DeVry continuously since that time.

69.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

70.     As a result of the facts set forth herein, Plaintiff has not made any demand on the Board to institute this action against the Individual Defendants.  Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

71.     The Board currently consists of twelve directors: defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, Ruiz, Shapiro, Taylor and Wardell and non-defendant Alan G. Merten ("Merten"), who was elected to the Board at the annual meeting on

November 7, 2012.  The following directors are incapable of independently and disinterestedly considering a demand to vigorously prosecute this action:

a.  Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell, because they knowingly, deliberately, and in bad faith manipulated the designation of the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of avoiding liability in this action and thereby advantaging themselves at the expense of the Company, as alleged in detail in paragraphs 45-59 above.  These directors are directly interested in the transaction of which Plaintiff complains, which was not the product of a valid exercise of business judgment and for which they face a substantial likelihood of liability; and

b.  Defendant Hamburger, because he received a personal financial benefit as a result of the misconduct alleged herein in that he has been allowed to retain the 87,910 Options rather than having them rescinded.

72.  Demand is also excused because the misconduct complained of herein was not, and could not have been, the product of a good faith exercise of business judgment.  On the contrary, defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell, knowingly, deliberately, and in bad faith manipulated the designation of the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of avoiding liability in this action and thereby advantaging themselves at the expense of the Company, as alleged in detail in paragraphs 45-59 above, which is not and cannot be protected by the business judgment rule.

## CLASS ACTION ALLEGATIONS

73.  Plaintiff brings certain claims in this action on her own behalf and as a class action on behalf of those who held DeVry stock as of the close of business on September 24, 2012 which represents the record date for stockholders entitled to vote at DeVry's 2012 annual meeting (the "Class").  Excluded from the Class are the Individual Defendants and any person, firm, trust, corporation, or other entity related to, or affiliated with, any Individual Defendant.

74.  This action is properly maintainable as a class action.

75.     The Class is so numerous that joinder of all members is impracticable.  As of September 24, 2012, there were more than 67 million shares of Company stock outstanding. Upon information and belief, there are thousands of members of the Class

76.     There are questions of law and fact which are common to the Class, including, but not limited to:

a.     whether the 2012 Proxy contains materially misleading statements, or omits information necessary to render it not misleading; and

b.     whether Plaintiff and the other members of the Class are entitled to the equitable relief they seek, *e.g.*, invalidating the results of the stockholder votes held at DeVry's 2012 annual meeting and ordering defendants to make corrective disclosures and hold a new vote.

77.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class.  Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

78.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual Class members that would establish incompatible standards of conduct for defendants.

79.     Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or corresponding declaratory relief is appropriate respecting the Class as a whole.

80.     The questions of law and fact common to the members of the Class predominate over any questions affecting only its individual members, such that a class action is superior to any other available method for fairly and efficiently adjudicating the controversy.

## COUNT I

### Against Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell for Breach of Fiduciary Duty

81.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

82.     Plaintiff brings this Count I derivatively on behalf of DeVry.

83.     As alleged in detail herein, each of the Individual Defendants, by reason of their positions as fiduciaries of the Company, owed to the Company the duties of undivided loyalty and good faith.

84.     Defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell breached their fiduciary duties of loyalty and good faith by knowingly, deliberately, and in bad faith manipulating the designation of the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of avoiding liability in this action and thereby advantaging themselves at the expense of the Company, as alleged herein.

85.     The Company was damaged as a direct and proximate result of defendants Begley, Brown, Curran, Huston, Keevan, Logan, Ruiz, Shapiro and Wardell's foregoing breaches of fiduciary duties, as alleged herein.

## COUNT II

### Against Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell for Breach of Fiduciary Duty

86.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

87.     Plaintiff brings this Count II on her own behalf and on behalf of the Class.

88.     As alleged in detail herein, defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell owed Plaintiff and the members of the Class the fiduciary duties of loyalty, good faith and candor.

89.     Defendants Begley, Brown, Curran, Hamburger, Huston, Keevan, Logan, McGee, Ruiz, Shapiro, Taylor and Wardell breached their fiduciary duties of loyalty, good faith and candor by disseminating to DeVry stockholders the 2012 Proxy, which they knew contained false and misleading statements and material omissions, as alleged herein.

90.     As a direct and proximate result of the foregoing breaches of fiduciary duties, Plaintiff and the members of the Class were deprived of their right to cast fully informed votes at DeVry's 2012 annual meeting.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

a.     Awarding the Company the amount of damages it sustained as a result of the defendants' breaches of fiduciary duties;

b.     Invalidating the results of the stockholder votes held at DeVry's 2012 annual meeting and ordering defendants to make corrective disclosures and hold a new vote;

c.     Granting appropriate equitable relief to remedy the defendants' breaches of fiduciary duties;

d.     Awarding to Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

e.     Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims set forth herein.

Dated:  August 22, 2013

**LASKY & RIFKIND, LTD.**
Norman Rifkind
Amelia S. Newton

 /s/ Norman Rifkind
351 W. Hubbard St., Suite 401
Chicago, IL 60654
Tel: (312) 634-0057
Fax: (312) 634-0059


**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Eric L. Zagar
Robin Winchester
Matthew Goldstein
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (267) 948-2512

***Counsel for Plaintiff***

## VERIFICATION

I, Jan Donnawell, hereby verify that I have authorized the filing of the attached Verified Amended Class Action and Derivative Complaint, that I have reviewed the Verified Amended Class Action and Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

DATE: July 18, 2013                    _____
                                        Jan Donnawell