UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN DONNAWELL, derivatively on behalf of DEVRY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 12 C 9074 ) ) Judge George M. Marovich ) |
| DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, GARY BUTLER, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, JULIA A. McGEE, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR, and LISA W. WARDELL, | ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| DEVRY, INC., | ) ) |
| Nominal Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After the Court dismissed her original complaint, plaintiff Jan Donnawell ("Donnawell") filed an amended complaint against defendants Daniel Hamburger ("Hamburger"), Christopher B. Begley ("Begley"), David S. Brown ("Brown"), Gary Butler ("Butler"), Connie R. Curran ("Curran"), Darren R. Huston ("Huston"), William T. Keevan ("Keevan"), Lyle Logan ("Logan"), Julia A. McGee ("McGee"), Fernando Ruiz ("Ruiz"), Harold T. Shapiro ("Shapiro"), Ronald L. Taylor ("Taylor") and Lisa W. Wardell ("Wardell") and against nominal defendant

DeVry Inc. ("DeVry").[1] The individual defendants are members of the Board of Directors of DeVry.

Defendants have filed a motion to dismiss plaintiff's claims. For the reasons set forth below, the Court grants the motion to dismiss.

I.      **Background**

In November 2005, DeVry adopted the Incentive Plan of 2005 and, later, the Amended and Restated Incentive Plan of 2005 (the "2005 Plan"). Under the 2005 Plan, the company was allowed to award stock options to certain employees of the company. The company could not, however, make an award of stock options under the 2005 Plan that exceeded 150,000 shares of DeVry stock per person per year. Notwithstanding the limit in the 2005 Plan, DeVry granted CEO Daniel Hamburger ("Hamburger") stock options of 184,100 shares in August 2010, 170,200 shares in August 2011 and 255,425 shares in August 2012.

Based on these grants, DeVry shareholder Milton Pfeiffer ("Pfeiffer") filed a shareholder derivative suit in the Circuit Court of DuPage County on October 15, 2012. Pfeiffer alleged that the Board of DeVry breached its fiduciary duty by awarding stock options in excess of the limits

---

[1]In Count IV of her original complaint, plaintiff asserted that the individual defendants violated Section 14(a) of the Securities Exchange Act by including false or misleading statements in a Form DEF 14A proxy statement (the "2012 Proxy") that it filed with the Securities and Exchange Commission ("SEC") and distributed to DeVry shareholders. That claim gave the Court jurisdiction over this case. In her amended complaint, Donnawell has dropped the federal claim and has included only state-law claims. Nonetheless, the Court has diversity jurisdiction over this case, because the amount in controversy is greater than $75,000.00 and the case is one between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). Plaintiff Donnawell is a citizen of Texas. DeVry is a citizen of Delaware and Illinois. Defendants Hamburger, Begley, Brown, Curran, Logan and Taylor are citizens of Illinois. Defendant Huston is a citizen of the Netherlands. Defendants Keevan and Wardell are citizens of Maryland. McGee is a citizen of New York. Ruiz is a citizen of Michigan. Shapiro is a citizen of New Jersey.

of the 2005 Plan, that the stock option awards were a waste of corporate assets and that the awards constituted unjust enrichment to CEO Hamburger. Less than a month later, on November 12, 2012, plaintiff Donnawell filed her original complaint here. Like Pfeiffer had alleged in state court, Donnawell alleged that the Board members breached their fiduciary duty by granting awards in excess of 150,000 shares (Count I), that the Board members wasted corporate assets (Count III) and that the awards unjustly enriched Hamburger (Count V). In Count IV, Donnawell asserted that the individual defendants violated Section 14(a) of the Securities Exchange Act by including false or misleading statements in the 2012 Proxy. Specifically, Donnawell alleged that "the 2012 Proxy was false and misleading because it falsely implied that that [sic] gains on the stock options awarded to defendant Hamburger will be entitled to tax deductibility under section 162(m), when in fact the violation of the 150,000 share limit put at risk the tax deductibility of such awards and the gains thereon." (Donnawell Complt. ¶ 41). In Count II, Donnawell alleged that defendants breached their fiduciary duty "by disseminating the 2012 Proxy, which they knew contained material omissions . . ." (Donnawell Complt. ¶ 59).

By the time defendants filed their motion to dismiss the original complaint, DeVry had already corrected the error. With their motion to dismiss, defendants put forth evidence that DeVry had, in essence, changed the grants such that Hamburger was awarded stock options of 150,000 shares under the 2005 Plan for the year 2010; 150,000 shares under the 2005 Plan for the year 2011; and 150,000 shares under the 2005 Plan for the year 2012. In addition to the awards under the 2005 Plan, DeVry also granted Hamburger stock options for 87,910 shares for the year 2012 under a different plan, the 2003 Stock Incentive Plan (the "2003 Plan"). Accordingly, the Court dismissed as moot Counts I, III and V of Donnawell's original complaint. The Court also

dismissed Counts II and IV (the claims that defendants breached their fiduciary duty by making misstatements in the 2012 Proxy) for failure to make a demand.

In her amended complaint, Donnawell changes tack. Donnawell now asserts, in Count I, that defendants breached their fiduciary duty by designating the stock options for 87,910 shares as having been awarded under the 2003 Plan in order to avoid liability on Donnawell's original claims--the ones the Court dismissed as moot. In Count II, Donnawell alleges that defendants breached their fiduciary duty by disseminating the 2012 Proxy, which contained false and misleading statements.

The Court takes the following allegations, from Donnawell's amended complaint, as true.

DeVry shareholders approved the 2003 Plan in November 2003. The 2003 Plan authorized DeVry to grant options for up to 2,000,000 shares. Two years later, DeVry had used about half of the options available under the 2003 Plan. As of June 2012, DeVry had 98,110 shares available under the 2003 Plan. In November 2005, DeVry shareholders approved the 2005 Plan, which was amended a year later. Under the 2005 Plan, DeVry could award options for up to 150,000 shares per person per fiscal year.

Donnawell believes that the stock-option award of 87,910 shares to Hamburger under the 2003 Plan was a breach of fiduciary duty. Specifically, plaintiff alleges that the independent directors "retroactively designated the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of being able to argue that those options did not count against the 2005 Plan's 150,000 shares per person limit and therefore did not have to be rescinded." (Am. Complt. ¶ 57). Plaintiff alleges that the directors "manipulated the designation of the 87,910 Options as having been awarded under the 2003 Plan for the sole purpose of avoiding liability in

this action and thereby advantaging themselves at the expense of the company." (Am. Complt. ¶ 58). Plaintiff alleges that "DeVry has sustained damages, including, but not limited to, the value of the 87,910 Options." (Am. Complt. ¶ 59).

Donnawell also alleges that the defendants breached their fiduciary duties by making a false and misleading statement in the 2012 Proxy, thereby depriving DeVry shareholders of their right to cast fully-informed votes at the annual meeting. "Specifically, the 2012 Proxy falsely and misleadingly stated that '[g]ains on the exercise of stock options . . . qualify as performance-based compensation under 162(m),' but did not disclose that the gains on the exercise of the stock options awarded to Hamburger in 2008, 2010, and 2011 did not qualify as performance-based compensation under Section 162(m) because those awards violated the terms of the 2005 Plan." (Am. Complt. ¶66).

The 2012 Proxy stated, in relevant part:

> Section 162(m) of the Internal Revenue Code generally disallows a tax deduction to public companies for certain compensation in excess of $1 million per year paid to 'covered employees,' defined as the chief executive officer and the three other most highly compensated officers (other than the chief financial officer) employed as executive officers at year-end. Certain compensation, including 'performance-based compensation,' may qualify for an exemption from the deduction limit if it satisfies certain requirements under Section 162(m). The Compensation Committee views the tax deductibility of executive compensation as one factor to be considered in the context of its overall compensation philosophy. The Compensation Committee reviews each material element of compensation on a continuing basis and takes steps to assure deductibility if that can be accomplished while still remaining faithful to our executive compensation philosophy and objectives.
>
> Base salaries do not qualify as 'performance-based compensation' under Section 162(m). However the base salaries of DeVry's NEOs are below the $1 million level. Amounts paid to an executive that are excludable from gross income, such as Success Sharing Retirement Plan and Deferred Plan contributions reflected in the 'All Other Compensation' column in the Summary Compensation

> Table, are not subject to Section 162(m). Incentive compensation paid by DeVry
> in fiscal year 2012 under the MIP that is based on organizational performance
> (whether DeVry or another institution) is expected to qualify as 'performance-
> based compensation.' *Gains on the exercise of stock options* and income
> recognized upon the vesting of Performance Shares *also qualify as performance-
> based compensation under Section 162(m).*

(2012 Proxy at 32-33) (emphasis added). The italicized portion is the portion plaintiff alleges to be false or misleading.[2]

Donnawell admits that she did not make a demand on DeVry before filing these claims. Donnawell alleges that demand would have been futile, because the defendants were directly interested in the vote. First, Hamburger was interested, because he was the recipient of the stock options for 87,910 shares. In addition, Donnawell alleges that the other directors were interested, because they stood to be held liable with respect to Donnawell's original claims.

## II.     Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the

---

[2] Donnawell referred to the 2012 Proxy in her complaint, but she did not attach a copy. Defendants attached a copy to their motion to dismiss. The Court may consider the 2012 Proxy without converting the motion to a motion for summary judgment, because plaintiff referred to it in her complaint and it is central to her claim. *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007) (document attached to motion to dismiss is considered part of the pleadings where the document is referred to in the complaint and is central to the plaintiff's claim).

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). To survive a motion to dismiss, a claim must be plausible. *Iqbal*, 129 S.Ct. at 1950. Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S.Ct. at 1974.

## III. Discussion

### A. Count I

In Count I, Donnawell asserts that defendants breached their fiduciary duty to shareholders by awarding Hamburger stock options for 87,910 shares, a decision the directors made, according to Donnawell, in order to avoid liability on her original claims in this suit. Defendants move to dismiss on the grounds that the allegations do not constitute a breach of fiduciary duty and that plaintiff has not alleged demand futility. The parties agree that Delaware law applies.

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson*

*v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 *Del.C.* § 141(a)). The power to manage the corporation "carries with it certain fundamental fiduciary obligations to the corporation and its shareholders." *Id.* It also carries with it the protections of the business judgment rule, which "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.*

The parties agree that plaintiff did not make a presuit demand and that, accordingly, she must allege demand futility. Fed.R.Civ.P. 23.1(b)(3)(B). The law of the state of incorporation (which the parties agree is Delaware) determines whether demand may be excused as futile. *In re Abbott Depakote Shareholder Deriv. Lit'n*, Case No. 11 C 8114, 2013 WL 2451152 at *4 (N.D. Ill. June 5, 2013). In order to allege demand futility under Delaware law, a plaintiff must allege facts that create reasonable doubt that: "(1) the directors are disinterested and independent; and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

Under Delaware law, directors are presumed disinterested. *Raul v. Rand*, 929 F.Supp. 2d 333, 346 (D. Del. 2013). To show a reasonable doubt as to the first prong of the *Aronson* test, plaintiff "must undertake a 'director-by-director analysis' showing that the majority of the Board was incapable, due either to a material personal interest or domination and control, of objectively evaluating a demand, if made." *Raul v. Rynd*, 929 F. Supp.2d at 346. Here, plaintiff has alleged that one director, Hamburger, has a personal financial interest in the decision, because he was the recipient of the shares. Plaintiff has not, however, alleged that at least half of the directors had a personal financial interest in the decision. Instead, plaintiff alleges that the directors are

interested by virtue of their risk of liability on the claims she made in her original suit. Plaintiff alleges that defendants awarded the options for 87,910 shares under the 2003 Plan in order to avoid liability. The Court concludes that litigation risk is not the type of interest that excuses demand futility for purposes of *Aronson*. *See Raul*, 929 F. Supp.2d at 346-47 (finding no demand futility where plaintiff alleged directors were interested due to potential liability in the lawsuit); *Seinfeld v. Slager*, case No. 6462-VCG, 2012 WL 2501105 at *2 (Del. Ch. June 29, 2012) ("A director is not interested merely because he is named as a defendant in a suit."). Otherwise, a corporation would have to adopt a new board every time the board was sued; yet, decisions to settle lawsuits are within the exercise of the business judgment rule. *Weinberger v. Bankston*, 1987 WL 20182 at *3 (Del.Ch. Nov. 19, 1987) ("Voluntary settlement of litigation is favored in the law, and the decision to settle is within the exercise of the directors' business judgment. The fact that the underlying claim may have involved illegal activity does not deprive the directors of their power to settle the claim and does not make the settlement unlawful.") (internal citations omitted).

Plaintiff also tries to allege demand futility by asserting that the decision was not a product of a valid business judgment. This is a tall order, because: (a) the business judgment rule applies to compensation decisions (*Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000); and (b) plaintiff admits (by alleging in her amended complaint) that the decision to award options for 87,910 shares under the 2003 Plan *did not violate the 2003 Plan*. If plaintiff could allege that the award violated the 2003 Plan, she would have created a reasonable doubt that the decision was a valid exercise of business judgment. *Halpert v. Zhang*, __F.Supp. 2d __, __, 2013 WL 4047153 at *5 (D. Del. Aug. 7, 2013) (allegations of an award that violated the terms of the plan were

sufficient to create reasonable doubt that decision was valid exercise of business judgment). But where, as here, the decision complied with the terms of a plan that had already been approved by shareholders, there can be no reasonable doubt that the decision is a result of the valid exercise of business judgment. *See In re: 3 COM Corp.*, Case No. CA 16721, 1999 WL 1009210 at *3 (Del.Ch. Oct. 25, 1999) ("[o]ne cannot plausibly contend that the directors structured and implemented a self-interested transaction inconsistent with the interests of the corporation and its shareholders when the shareholders knowingly set the parameters of the Plan, approved it in advance, and the directors implemented the Plan according to its terms."). Thus, plaintiff has not adequately alleged demand futility with respect to Count I.

Furthermore, for basically the same reasons, the Court fails to see how the decision to grant Hamburger stock options for 87,910 shares under the 2003 Plan could constitute a breach of fiduciary duty. To begin with, as defendants point out and as Donnawell admits, the award did not violate the 2003 Plan. To the contrary, Donnawell alleged in her complaint that DeVry had more than enough shares left in the 2003 Plan to make the award of options for 87,910 shares to Hamburger. Notwithstanding the fact that the award did not violate the 2003 Plan, Donnawell still argues that it constitutes a breach of fiduciary duty, because defendants had a bad motive in making the award. The bad motive, according to plaintiff, was that they were trying to avoid liability with respect to her original complaint. That is imprecise, because to avoid liability on Donnawell's original claims (and on the claims in the Pfeiffer case filed before her case), the defendants needed only to limit the awards under the 2005 Plan to 150,000 shares per year. (Because it did so, Donnawell's original claims were moot.) The decision to award additional

options for 87,910 shares under the 2003 Plan had no impact on defendants' liability on the original claims.

Because Count I does not state a claim for breach of fiduciary duty and because plaintiff has not adequately alleged demand futility, the Court grants defendants' motion to dismiss with respect to Count I.

**B.      Count II**

In Count II, Donnawell asserts that defendants breached their fiduciary duties by making a misstatement in the 2012 Proxy. The statement with which plaintiff takes issue is the statement that "[g]ains on the exercise of stock options . . . also qualify as performance-based compensation under Section 162(m)."

Donnawell argues that the statement was "patently false when made because it omits the fact that the 2008, 2010 and 2011 awards to Hamburger violated the express terms of the 2005 Plan and therefore ***could not possibly*** 'qualify as performance-based compensation under Section 162(m).' (Donnawell Brief at 12) (emphasis in original). Defendants argue that this is not a misstatement, and the Court agrees. The most basic problem with Donnawell's argument is that the statement does not say that Hamburger's stock options, specifically, or even all stock options, generally, are performance-based compensation for purposes of Section 162(m). Instead, it says that "gains on the exercise of stock options" qualify as performance-based compensation. Gains on the exercise of stock options are not the same thing as the stock options themselves. Donnawell has not alleged that Hamburger exercised any stock options (and therefore had any gains) before the directors corrected the award. Donnawell has not included any allegations

tending to show that the general statement about the tax treatment of *gains* on the exercise of stock options is a misstatement.

In any case, the general statement about the treatment of gains must be read in context. In the same section, DeVry stated, "Certain compensation, including 'performance-based compensation,' *may* qualify for an exemption from the deduction limit if it satisfies certain requirements under Section 162(m)," and that tax deductibility is "one factor to be considered in the context of overall compensation philosophy." (2012 Proxy at 32-33) (emphasis added). That language cannot be reasonably construed as promising that Hamburger's stock options (or any gains thereon) were tax deductible. *See Seinfeld v. O'Connor*, 774 F. Supp.2d 660, 666 (D.Del. 2011) ("[Corporation] did not represent that the [plan] was guaranteed to be tax deductible. Instead, the proxy statement makes clear that the [plan] '*may* qualify as performance-based compensation under Section 162(m). Later, the proxy statement provides that the [plan] is '*intended* to comply' with the requirements of § 162(m). Thus, [plaintiff's] argument is baseless: there was no promise that the [plan] was guaranteed to be tax-deductible, so even if the plan was ultimately *not deductible*, the proxy statement does not contain false or misleading statements.") (emphasis in original; internal citations omitted).

Count II is dismissed for failure to state a claim.[3]

---

[3]Furthermore, even if the 2012 Proxy could be interpreted as including a material misstatement, it was a misstatement only temporarily. The statement was indisputably accurate as soon as the directors brought Hamburger's award within the limits of the 2005 Plan, which suggests that any claim for misstatement would be moot. Plaintiff admits there are no damages. (Plaintiff's Brief at 13) ("Of course there are no financial damages, as the harm alleged is not financial. Rather, the harm to DeVry stockholders was that they were forced to vote on a materially false and misleading 2012 Proxy."). The relief plaintiff seeks is a new vote (Am. Complt. at 23), but to what end? The statements Donnawell argues were misstatement as of the date of the vote are indisputably accurate now, which means Donnawell's remedy would be a

## IV. Conclusion

For the reasons set forth above, the Court grants defendants' motion to dismiss. Counts I and II are dismissed without prejudice. Plaintiff is granted until May 5, 2014 to file a second amended complaint.

ENTER:

*George M. Marovich*

George M. Marovich
United States District Judge

DATED: April 7, 2014

---

vote based on the original disclosures, something the shareholders already had.