UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAN DONNAWELL, derivatively on behalf of DEVRY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 12 C 9074 ) ) Judge George M. Marovich ) |
| DANIEL HAMBURGER, CHRISTOPHER B. BEGLEY, DAVID S. BROWN, CONNIE R. CURRAN, DARREN R. HUSTON, WILLIAM T. KEEVAN, LYLE LOGAN, FERNANDO RUIZ, HAROLD T. SHAPIRO, RONALD L. TAYLOR, LISA W. WARDELL, and ALAN G. MERTEN, | ) ) ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| DEVRY, INC., | ) ) |
| Nominal Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

After the Court dismissed her original and amended complaints, plaintiff Jan Donnawell ("Donnawell") filed a second-amended complaint ("SA Complt.") against defendants Daniel Hamburger ("Hamburger"), Christopher B. Begley ("Begley"), David S. Brown ("Brown"), Connie R. Curran ("Curran"), Darren R. Huston ("Huston"), William T. Keevan ("Keevan"), Lyle Logan ("Logan"), Fernando Ruiz ("Ruiz"), Harold T. Shapiro ("Shapiro"), Ronald L. Taylor ("Taylor"), Lisa W. Wardell ("Wardell") and Alan G. Merten ("Merten") and against

nominal defendant DeVry Inc. ("DeVry").[1]  The individual defendants are members of the Board of Directors of DeVry.

Defendants have filed a motion to dismiss plaintiff's claims, and Milton Pfeiffer has filed a motion to intervene.  For the reasons set forth below, the Court denies the motion to intervene and grants the motion to dismiss.

**I.      Background**

Although plaintiff's claims are very different from the claims in her original complaint, a review of the prior complaints is useful in understanding the current allegations.

In November 2005, DeVry adopted the Incentive Plan of 2005 and, later, the Amended and Restated Incentive Plan of 2005 (the "2005 Plan").  Under the 2005 Plan, the company was allowed to award stock options to certain employees of the company.  The company could not, however, make an award of stock options under the 2005 Plan that exceeded 150,000 shares of DeVry stock per person per year.  Notwithstanding the limit in the 2005 Plan, DeVry granted CEO Daniel Hamburger ("Hamburger") stock options of 184,100 shares in August 2010, 170,200 shares in August 2011 and 255,425 shares in August 2012.

Based on these grants, DeVry shareholder Milton Pfeiffer ("Pfeiffer") (who owns a single share of DeVry stock and now wants to intervene in this case) filed a shareholder derivative suit

---

[1]Defendants Gary Butler and Julia McGee have been dropped from the suit, and Merten has been added.  The Court has diversity jurisdiction over this case, because the amount in controversy is greater than $75,000.00 and the case is one between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3). Plaintiff Donnawell is a citizen of Texas.  DeVry is a citizen of Delaware and Illinois.  Defendants Hamburger, Begley, Brown, Curran, Logan and Taylor are citizens of Illinois.  Defendant Huston is a citizen of the Netherlands.  Defendants Keevan and Wardell are citizens of Maryland.  Ruiz is a citizen of Michigan.  Shapiro is a citizen of New Jersey.  Merten is a citizen of Virginia.  Proposed intervenor Milton Pfeiffer is a citizen of New York.

in the Circuit Court of DuPage County on October 15, 2012. Pfeiffer alleged that the Board of DeVry breached its fiduciary duty by awarding stock options in excess of the limits of the 2005 Plan, that the stock option awards were a waste of corporate assets and that the awards constituted unjust enrichment to CEO Hamburger.

On November 12, 2012, less than a month after Pfeiffer filed his suit in state court, plaintiff Donnawell filed her original complaint here. Like Pfeiffer had alleged in state court, Donnawell alleged that the Board members breached their fiduciary duty by granting awards in excess of 150,000 shares (Count I), that the Board members wasted corporate assets (Count III) and that the awards unjustly enriched Hamburger (Count V). In Count IV, Donnawell asserted that the individual defendants violated Section 14(a) of the Securities Exchange Act by including false or misleading statements in the 2012 Proxy. Specifically, Donnawell alleged that "the 2012 Proxy was false and misleading because it falsely implied that that [sic] gains on the stock options awarded to defendant Hamburger will be entitled to tax deductibility under section 162(m), when in fact the violation of the 150,000 share limit put at risk the tax deductibility of such awards and the gains thereon." (Donnawell Complt. ¶ 41). In Count II, Donnawell alleged that defendants breached their fiduciary duty "by disseminating the 2012 Proxy, which they knew contained material omissions . . ." (Donnawell Complt. ¶ 59).

By the time defendants filed their motion to dismiss Donnawell's original complaint, DeVry had corrected the error. With their motion to dismiss Donnawell's claims (as moot), defendants put forth evidence that DeVry had, in essence, changed the grants such that Hamburger was given stock options for 150,000 shares under the 2005 Plan for the year 2010 and 150,000 shares under the 2005 Plan for the year 2011. For the grant made in August 2012,

DeVry fulfilled most of the grant by providing options for 150,000 shares under the 2005 Plan and options for 87,910 shares under a different plan, the 2003 Stock Incentive Plan (the "2003 Plan"). Accordingly, the Court dismissed as moot Counts I, III and V of Donnawell's original complaint. The Court also dismissed Counts II and IV (the claims that defendants breached their fiduciary duty by making misstatements in the 2012 Proxy) for failure to make a demand.

By this time, the state court had dismissed as moot Pfeiffer's claims in that case. For his trouble, Pfeiffer filed with the state court a motion seeking attorneys' fees and expenses in the amount of $820,706.07. The state court awarded about $95,000 in attorneys' fees, and Pfeiffer has appealed the fee award (though not, apparently, the decision on the merits).

Donnawell filed an amended complaint in this case. In her amended complaint, Donnawell changed tack. In Count I of her amended complaint, Donnawell alleged that defendants breached their fiduciary duty by designating the stock options for the 87,910 shares as having been awarded under the 2003 Plan in order to avoid liability on Donnawell's original claims, notwithstanding her allegation that options for shares under the 2003 Plan were still available to be so awarded. In Count II, Donnawell alleged that defendants breached their fiduciary duty by disseminating the 2012 Proxy, which plaintiff believed contained false and misleading statements about the tax deductibility of certain stock options. The Court dismissed both claims. The Court noted that Count II did not allege a false or misleading statement. As to Count I, the Court noted that the 2003 Plan allowed the award of options for 87,910 shares, such that plaintiff had not alleged a breach a fiduciary duty. The Court also concluded that demand was not excused, because the decision did not violate the 2003 Plan and was, therefore, a decision based on a valid exercise of business judgment.

In her second-amended complaint, Donnawell has again changed tack. Now, plaintiff asserts that defendants violated the terms of the 2003 Plan when they authorized the options for 87,910 shares under that plan. In Count I, plaintiff asserts that defendants breached their fiduciary duty by violating the 2003 Plan. In Count II, plaintiff asserts that defendant Hamburger was unjustly enriched by the options for the 87,910 shares.

The Court takes as true the following allegations from Donnawell's second-amended complaint.

Plaintiff alleges that on August 29, 2012, DeVry's Compensation Committee granted and the Independent Directors approved an award of stock options for 255,425 shares of DeVry stock to Hamburger under the 2005 Plan. Later, the company (prompted by Milton Pfeiffer's original complaint in the Circuit Court of DuPage County) conducted an internal investigation and concluded that the grant violated the 2005 Plan, which did not allow awards above 150,000 shares per person per year. Plaintiff alleges that with "regard to Hamburger's excess award for 2012, however, the Board rescinded only 17,515 stock options, having concluded that DeVry was able to use 87,910 shares available under the 2003 Plan to fulfill 87,910 of the 255,425 options awarded to Hamburger on August 29, 2012." (S.A. Complt ¶ 6).

Plaintiff alleges that the Company discussed the August 29, 2012 grant in its 2013 Proxy, which it filed with the SEC on October 7, 2013. The 2013 Proxy states, among other things:

> As part of the overall compensation package for fiscal year 2013, the independent directors, upon the recommendation of the Compensation Committee, approved Long-Term Incentive (LTI) compensation for Mr. Hamburger valued at $3,500,000, consisting of 60% stock options, 25% Performance Shares, and 15% Full Value Shares to be granted under any of DeVry's currently maintained equity compensation plans. DeVry attempted to implement Mr. Hamburger's stock option grant under the DeVry Amended and Restated 2005 Incentive Plan (the "2005 Plan") and filed on his behalf a report on Form 4 indicating that Mr.

> Hamburger had acquired 255,425 stock options. It subsequently came to DeVry's attention that Mr. Hamburger's stock option grants in fiscal years 2009, 2011, 2012, and 2013 may have exceeded the 150,000 limit on the number of stock options that may be granted to any individual participant in a fiscal-year period under the 2005 Plan. Mr. Hamburger had not exercised any of the stock options in question.
>
> The matter was investigated by a cross-functional DeVry working group, advised by external counsel and working in coordination with DeVry's external auditors, all under the oversight of the Compensation Committee. This group concluded that any stock options purportedly granted under the 2005 Plan in excess of the 150,000 annual stock option limit were, in fact, unfulfilled, as such awards were null and void under the express terms of the 2005 Plan. Accordingly, DeVry filed on Mr. Hamburger's behalf amended reports on Form 4 stating that he had not, in fact, acquired more than 150,000 stock options under the 2005 Plan in fiscal year 2013 or in any proceeding years in question. With respect to the implementation of Mr. Hamburger's fiscal year 2013 stock option grant, DeVry was able to use 87,910 shares available under the DeVry 2003 Incentive Stock Plan (the "2003 Plan") to fulfill part of the Compensation Committee's original intentions, leaving 17,515 stock options still unfulfilled for the 2013 fiscal year . . .

(SA Complt. ¶ 56; 2013 Proxy).

Donnawell alleges that by fulfilling the August 29, 2012 grant with options for 87,910 shares from the 2003 Plan, the defendants violated the 2003 Plan in a number of ways. First, plaintiff alleges that fulfillment of options for 87,910 shares from the 2003 Plan violated the 2003 Plan, because only the Plan Committee and not the Compensation Committee could authorize options from the 2003 Plan. Plaintiff alleges that the Plan Committee did not exist at the time. Plaintiff alleges that the terms of the 2003 Plan state that the Plan Committee consists of "members of the Company's Board of Directors who are full-time, salaried employees of the Company" and that only Hamburger himself qualified to be a member. (SA Complt. at 59).[2]

---

[2]Donnawell referred to the 2003 Plan in her complaint, but she did not attach a copy. Defendants attached a copy to their motion to dismiss. The Court may consider the 2003 Plan without converting the motion to a motion for summary judgment, because plaintiff referred to it in her complaint and it is central to her claim. *Equal Employment Opportunity Comm'n v.*

Next, plaintiff alleges that fulfilling the options for 87,910 shares from the 2003 Plan violated the 2003 Plan, because members of the Plan Committee, which included Hamburger, were allowed only 500 shares under the terms of the 2003 Plan. (SA Complt. at 60-61).

Finally, plaintiff alleges that the fulfillment of the options for 87,910 shares under the 2003 Plan violated the 2003 Plan, because it allowed defendants to provide Hamburger options for shares at below market value. Specifically, plaintiff alleges that the 2003 Plan requires the exercise price of options under the plan to be "100% of the Fair Market Value (as defined below) of a share of such Common Stock on the date on which the option is granted." Plaintiff alleges that Hamburger was given options for the 87,910 shares at $18.60 per share, which was the market price on August 29, 2012. Plaintiff, though, believes the appropriate exercise price is at least $24 per share, which plaintiff alleges is approximately the price at which the shares were trading when defendant decided to fulfill the grant using the 2003 Plan. Plaintiff asserts that by setting the exercise price at $18.60 per share, defendants have backdated the options to give Hamburger an unfair gain.

Donnawell admits that she did not make a demand on DeVry before filing these claims. Donnawell alleges that demand would have been futile, because the directors "knowingly, deliberately, and in bad faith" violated the terms of the 2003 Plan. (SA Complt. ¶¶ 77, 78).

Defendants moved to dismiss, and the parties have fully briefed that motion.

After the parties had fully briefed defendants' motion to dismiss, Pfeiffer filed a motion to intervene (and a proposed complaint), which motion is now also fully briefed. Like

---

*Concentra Health Services, Inc.*, 496 F.3d 773, 778 (7th Cir. 2007) (document attached to motion to dismiss is considered part of the pleadings where the document is referred to in the complaint and is central to the plaintiff's claim).

Donnawell, Pfeiffer believes that defendants backdated the options for the 87,910 shares to allow a lower exercise price than is appropriate. Pfeiffer proposes a three-count complaint, in which he would assert claims for breach of fiduciary duty (for allowing the alleged backdating), waste of corporate assets (for allowing the alleged backdating) and unjust enrichment (against Hamburger for accepting the allegedly backdated options). Like Donnawell, Pfeiffer made no demand on the corporation. Like Donnawell, Pfeiffer alleges that demand is excused because defendants violated an express and unambiguous provision of the 2003 Plan.

## II.  Standard on a motion to dismiss

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Bell Atlantic*, 127 S.Ct. at 1964-1965. "After *Bell Atlantic*, it is no longer sufficient for a complaint 'to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting *Equal Employment Opportunity Comm'n v. Concentra Health Services, Inc.*, 496 F.3d

773, 776 (7th Cir. 2007)).  To survive a motion to dismiss, a claim must be plausible.  *Iqbal*, 129 S.Ct. at 1950.  Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible."  *Bell Atlantic*, 127 S.Ct. at 1974.

### III.   Discussion

#### A.    Pfeiffer's motion to intervene

On a "timely motion," a court must allow intervention to one who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed.R.Civ.P. 24(a)(2).

Here, there can be no question that Pfeiffer has an interest in this case.  He is a shareholder, and every shareholder has a legally-cognizable interest in a derivative lawsuit.  Of course, his financial interest is quite small.  He owns but one share, and that share is worth less than $50.00.  (DeVry's shares have traded in the range of $33.59-$49.52 over the last 52 weeks.)  One might wonder why someone with such a small financial stake would be fighting so hard to intervene in a case.  The point remains, however, that Pfeiffer has a legally-cognizable interest.

Nonetheless, the Court concludes that intervention of right is not appropriate here for two reasons.  First, the Court agrees with Donnawell that this motion was not timely filed.  Donnawell filed her second-amended complaint (which, like Pfeiffer, alleges that the options were backdated) in April 2014.  By the time Pfeiffer filed his motion to intervene four months later, the parties had already fully briefed defendants' motion to dismiss the second-amended complaint.  Second, Donnawell is adequately representing Pfeiffer's legal interest in this case,

which is the interest of all shareholders. Donnawell is already asserting Pfeiffer's purported claim that the directors backdated Hamburger's stock options and is already asserting Pfeiffer's theory for why demand is excused. Donnawell is adequately representing the interest of all shareholders, which is Pfeiffer's legally-cognizable interest.

Of course, Pfeiffer's real interest in this case may be money, as in fees for his attorneys. He owns only one share of DeVry stock, has filed many shareholder-derivative suits against many corporations (as anyone with a Westlaw password could know) and asked for more than $800,000 in attorneys' fees for his short-lived state-court case against DeVry. Could it be that Pfeiffer's quest is not to protect his $50 investment in DeVry but rather to turn a corporate error into attorneys' fees? If so, he would be an inadequate representative of DeVry shareholders (who are interested in resolving the options issue at the least possible expense to the corporation they own), even were Donnawell not already adequately representing his legal interest in this case.

For all of these reasons, the Court also declines to grant permissive intervention. This case is on its third round of motions practice, and intervention will cause undue delay.

Pfeiffer's motion to intervene is denied.

### B. Defendants' motion to dismiss

Defendants move to dismiss plaintiff's second-amended complaint on the grounds that plaintiff has failed to allege demand futility.

The parties agree that plaintiff did not make a presuit demand and that, accordingly, she must allege demand futility. Fed.R.Civ.P. 23.1(b)(3)(B). The law of the state of incorporation (which the parties agree is Delaware) determines whether demand may be excused as futile. *In*

*re Abbott Depakote Shareholder Deriv. Lit'n*, Case No. 11 C 8114, 2013 WL 2451152 at *4 (N.D. Ill. June 5, 2013). In order to allege demand futility under Delaware law, a plaintiff must allege particular facts that create reasonable doubt that: "(1) the directors are disinterested and independent; and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984). "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 *Del.C.* § 141(a)). The power to manage the corporation "carries with it certain fundamental fiduciary obligations to the corporation and its shareholders." *Id.* It also carries with it the protections of the business judgment rule, which "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id.*

Defendants argue that plaintiff has not, in her second-amended complaint, created a reasonable doubt that the challenged decision was a product of a valid exercise of the business judgment rule. As defendants point out, plaintiff alleges only *generally* and not with *particular facts* that defendants knowingly, deliberately and in bad faith violated the 2003 Plan. Plaintiff responds that she has alleged enough just by alleging a violation of the 2003 Plan. The Court disagrees.

Allegations of a violation of a compensation plan, without more, will not suffice. The business judgment rule does not require a board to be correct. *Pfeiffer v. Leedle*, Case No. 7831-VCP, 2013 WL 5988416 at *5 (Del.Ch. Nov. 8, 2013) ("Conspicuously absent from the business judgment rule's requirements is the need for corporate directors actually to make the 'correct'

decision."). Thus, a plaintiff cannot excuse demand merely by alleging a violation of a compensation plan. *Freeman v. Mulva*, Case No. 11-686, 2014 WL 975308 (D.Del. March 12, 2014) ("This court has rejected the notion that 'a shareholder need only allege violation of a compensation agreement to excuse demand without additional allegations of knowledge and intent.'"); *Pfeiffer*, 2013 WL 5988416 at *5 ("The business judgment rule will not be rebutted, and thus demand excused, when a plaintiff alleges only that a board of directors failed to follow the terms of a stock incentive plan. . . . Eliminating the protection of the business judgment rule and finding demand futile in these instances effectively would nullify the business judgment rule and eviscerate the demand requirement."). If a plaintiff alleges a clear and intentional violation, however, that may create the *inference* that the violation was knowing and deliberate. *Pfeiffer*, 2013 WL 5988416 at *6 ("*Sanders* does not stand for the proposition that demand will be excused whenever a plaintiff alleges that a board violated the terms of a stock plan. Rather, *Sanders* teaches that when a plaintiff presents particularized factual allegations that indicate that the board clearly violated an unambiguous provision of a stock plan, it is proper to infer that such a violation was committed knowingly or intentionally, and, therefore, that demand should be excused."); *see also Friedman v. Khosrowshani*, Case No. 9161-CB, 2014 WL 3519188 at *12 (Del.Ch. July 16, 2014) (holding that demand was not excused because plaintiff had not alleged a clear violation of the compensation plan and had not alleged particularized facts to support an inference of bad faith).

The question in this case is whether plaintiff has alleged the sort of clear and intentional violation that would create an inference that the violation was knowing and deliberate, such that

it would excuse demand.  The Court concludes that plaintiff has not, because she has not alleged a clear and unambiguous violation of the 2003 Plan.

The first way plaintiff asserts that defendants violated the 2003 Plan is that the Compensation Committee, rather than the Plan Committee, authorized the fulfillment of a portion (87,910 shares) of Hamburger's stock option grant from the 2003 Plan.  Plaintiff alleges that only the Plan Committee can so authorize.  The Court disagrees that plaintiff has alleged a clear violation of the 2003 Plan.  The 2003 Plan states, in relevant part:

> 2. Administration.  The authority to manage and control the operation and administration of the Plan shall be vested in the Plan Committee, subject to approval by the Compensation Committee of the Company's Board of Directors.
> 3. Participation.  Subject to the terms and conditions of the Plan and approved by the Compensation Committee of the Board of Directors of actions taken with respect to employees, the Plan Committee shall determine and designate, from time to time, the directors and key employees of the Company and its Subsidiaries to whom stock options are to be granted or awarded (the "Participants"), and the number thereof to be granted or awarded to each Participant.

Given that the ultimate authority rested with the Compensation Committee, it would have been reasonable for the defendants to have concluded that the Compensation Committee could make the decision directly.  Thus, the alleged violation does not constitute the sort of clear and intentional violation that would allow an inference that the defendants' decision was not a product of a valid exercise of business judgment.

Next, plaintiff asserts that defendants violated the 2003 Plan in that they awarded Hamburger more than 500 shares under the 2003 Plan.  Plaintiff asserts that the 2003 Plan limits members of the Plan Committee (of which plaintiff alleges Hamburger was one) to 500 shares

per year. As defendants point out, plaintiff misreads the 2003 Plan. The 2003 Plan states, in relevant part:

> 4. Automatic Grant of Options to Plan Committee. Notwithstanding Paragraph 3 above, directors who are members of the Plan Committee shall receive, for service as a director, only an automatic non-discretionary stock option grant on July 1 every year during the term of the Plan. The amount of shares subject to the option that will be automatically granted to each director who is a member of the Plan Committee for service as a director shall be the lessor of (i) 500 shares or (ii) that number of shares equal to the largest multiple of 25 whose fair market value on the date of the grant does not exceed $25,000.

As defendants interpret this provision, it reflects an automatic award to Plan Committee members to compensate them for their service as directors, not a prohibition on awarding Plan Committee members additional shares under the Plan. That is a reasonable interpretation of the 2003 Plan. Plaintiff, then, has not alleged the sort of clear and intentional violation that would allow an inference that the defendants' decision was not a product of a valid exercise of business judgment.

Finally, plaintiff asserts that defendants violated the 2003 Plan by backdating the options. Specifically, the 2003 Plan requires the exercise price of stock options to be "100% of the Fair Market Price . . . on the date on which the option is granted." Plaintiff alleges that the options were granted on August 29, 2012, at which point the market price was $18.60. Plaintiff also claims that by making the decision--long after the grant date--to fulfill the August 29, 2012 grant with options from the 2003 Plan without changing the exercise price, defendants violated the terms of the 2003 Plan. As defendants argue, however, this is not a clear and intentional violation. Defendants reasonably argue that the grant date did not change from August 29, 2012 to another date just because subsequent to August 29, 2012 it became clear that options for only

-14-

150,000 shares could be fulfilled by the 2005 Plan and that options for 87,910 shares would have to be fulfilled by the 2003 Plan. The decision about fulfillment of the grant was not itself a separate grant. This is a reasonable argument, and if the grant date did not change, then the 2003 Plan was not violated. Because the defendants' decision is consistent with a reasonable interpretation of the 2003 Plan, plaintiff has not alleged a clear and intentional violation of the 2003 Plan and, accordingly, has not created an inference that the decision was not a product of a valid exercise of business judgment.

Plaintiff has not alleged demand futility, so this case is dismissed with prejudice.

Two defendants--Keevan and Shapiro--filed a separate motion to dismiss on the grounds that they had already left the Board of Directors when the decisions at issue in this case were made. They later filed a motion to withdraw a portion of their motion. Their motion to withdraw is granted, and their motion to dismiss is denied as moot.

## IV. Conclusion

For the reasons set forth above, the Court denies Pfeiffer's motion [109] to intervene. The Court grants defendants' motion [100] to dismiss and dismisses plaintiff's case with prejudice. The Court grants defendants Keevan and Shapiro's motion [101] to withdraw and denies as moot their motion [97] to dismiss. Case closed.

ENTER:

George M. Marovich
United States District Judge

DATED: December 22, 2014